### GREEN et ux *versus* MOORE, EXECUTOR, &c.

A by his last will and testament bequeathed two quarter sections of land to his daughter B The land had been purchased of the United States, and but one third of the purchase money paid. Held—That A's executor was bound to pay out the balance due to the United States and perfect B's title; on it appearing, that her share, then, would only equal the legacies given off by the said will to A's other children.

This was a bill in chancery filed in Madison Circuit Court, against William Moore the executor of the last will and testament of Uriah Bass. The case presented the following facts. Uriah Bass, by his last will and testament amongst other devises, bequeathed to Ann Green, his daughter, two quarter sections of land. The land in question had been purchased, by Bass, from the United States, and one fourth of the purchase money paid. Uriah Bass died possessed of an estate amply adequate to the payment of all his debts, and to the settlement of all his

bequests.    After the executor had qualified, the com-
plainants applied to him to pay out the balance due
on the land.    This he refused, alleging, that he had
no authority so to do, but required the complainants
to procure the decree of a competent Court on the
subject.    The complainants rejecting this requisition,
the land became forfeited.    This bill was then filed
to compel the executor to pay out of the assets in
his possession, the balance due on the land, and to
secure a patent for the complainants.    The answer
of the defendant admitted most of the above facts,
but contended that he proposed to complainants to
take advantage of the law extending further credit ;
and insisted on a demurrer to the bill.    On a final
hearing, the bill was dismissed, and the decree brought
to this Court for revision.

*Hutchison,* for Plaintiff—*Thornton, contra.*

CRENSHAW, J.

In this case, the bill and supplement set forth, that
Uriah Bass, by his last will and testament, among other
things, devised to his daughter Ann, the wife of John
A. Green, two quarter sections of land therein describ-
ed; that at public sale the testator had purchased
the lands of the United States, at the price of three
thousand nine hundred and thirty six dollars, having
paid one fourth of the purchase money, leaving three
fourths unpaid at the time of his death: that in his
will, he directed all his just debts to be paid, and
left a large estate amply sufficient to pay debts and
legacies and satisfy the devises contained in his will:
that the executor William Moore proved the will and
took possession of the whole of the personal estate:

that though requested, he failed and neglected to pay the remaining instalments due on the said two quarter sections of land, or to avail himself of further credit under the act of Congress called the relief law, so that the lands became forfeited to the United States. The answer admits the material facts stated in the bill and supplement, but in substance alleges, that the executor requested the complainants to avail themselves of the benefit of said act of Congress, and that if they would procure the decree of a competent Court, compelling him to do so, then he would pay the debt due to the United States; and concludes by insisting on the benefit of a demurrer. On a final hearing on the bill, supplement, answer and exhibits, the Circuit Court dismissed the bill; and this is now assigned for error.

The prayer of the bill is, that the executor may be compelled to re-purchase the land, or to pay an equivalent in money, with compensation for the improvements made by the complainants on the land. Whether the decree of the Circuit Court ought to be reversed and the prayer of the bill be decreed, is now the question for our consideration.

That in the construction of wills the intention of the testator ought to prevail as far as is consistent with the rules of law—that the residuum of the estate and even personal legacies may be taken if necessary, to the perfection of a devise of land—and that it is the duty of the executor out of the personalty to pay debts and discharge incumbrances from devises of land, whether the testator's title be in law or equity, are propositions affirmed by the counsel for the appellants, and not denied by the counsel for the appellees.

To arrive at the intention of the testator; as to any given clause of his will, we may resort to other clauses, or to the entire instrument to shew what was intended. If the testator in the present case, intended that the three instalments due to the government on the lands devised to his daughter Ann Green, should be paid out of his estate, it may be ascertained by a resort to this rule. That he intended to do equal justice to each of his daughters by giving them equal portions of his estate is evident from the face of the will. To each of them he has devised two quarter sections of land, and bequeathed to the two eldest, eight negroes a piece, and to each of his five younger daughters a legacy in negroes equal in value to the legacies of the elder daughters. Land of the same quantity and negroes equal in valud are evincive to my mind that the testator intended to extend his bounty in an equal degree to all his daughters.

Again; from the face of the will, it does not appear that the testator had not a perfect legal title to the four quarter sections devised to his two eldest daughters, it is fair to presume that he had, until the contrary is shewn to be the fact. We are not informed by the record that the title of Mrs. Sally Green was imperfect, or that her land was incumbered; it is therefore presumable that under the devise to her she has a clear legal title. The lands devised to the five younger daughters necessarily imply a perfect legal title, because the executor is required by the will to purchase those lands for these devisees at a price not exceeding eleven dollars per acre, and which was nearly equal to the price at which the land of Ann Green was originally pur-

chased from the United States. Can it then be supposed consistently with the testator's evident intention of equality in the distribution of his property among his daughters, that he did not intend his daughter Ann Green should also have a perfect legal title to the land which she took under the devise, and that her land should not be paid for out of his estate? that in effect, she should have no land when her elder sister had been provided for, and each of her younger sisters was to have land not exceeding in value three thousand five hundred and twenty dollars. This would be manifest injustice, and to my mind a contrary conclusion is irresistible.

This interpretation of the testator's intention is not only supported by the best rules of reason and justice, but is well sustained by authority, and is entirely consistent with the rules of law. And it is equally true, that it is the duty of the executor to resort to the *residuum* of the estate, and if necessary to personal legacies, for the payment of debts and the discharging of incumbrances on specific devises of land, and for the completion of an imperfect or epuitable title.

In the case of *Livingston* vs. *Newkirk*, reported in *3d Johns. Ch. Reports*, the principle is settled in New York, "that an equitable interest in lands, founded on articles of agreement for the purchase, will pass by a subsequent devise and that the executor must pay the purchase money for the benefit of the devisee."

The case of *Champion* vs. *Brown*,[a] is to the same effect. It was then determined that a contract for the purchase of land did, in equity, descend to the heirs of the vendee as real estate, and who may call on the executor or administrator to discharge the con-

[a] 6 John's Ch. Rep.

JULY TERM, 1831.

217

GREEN, et ux, vs. MOORE, EX'R, &c.

tract, so as to enable the heirs to demand a conveyance from the vendor.

The same doctrine is fully recognised, and well established by the English decisions. In the case of Perry vs. Phillips,[a] it was held, that an equitable lien was an equitable obligation to do according to conscience, and that a devise of it was good in equity. So, in Buckmaster vs. Danop,[b] the same rule was recognised by the Master of the Rolls; though in that case, the performance of the agreement in favor of the heir, out of the residuary legacy was refused, on the ground that there was no agreement binding on the parties, either in law or equity.—Also, the case of Broome vs. Monk,[c] is to the same effect. In that case the chancellor held, that a devise of land contracted for, was good, though the devisor had only an equitable estate, and that every devise was specific, and that money, to be laid out in land, should, in equity, be considered as land : though it was also held, that if the contract was not binding, or could not be enforced, nothing would pass by the devise.

All this law, insisted on by the complainants, was admitted by the defendant ; but its application to the case in hand was denied.

It was contended, that all the cases referred to, moved on the supposition that the contract could be enforced, and that the remedy was mutual ; but that in a sale of public land by the government, payment could not be coerced from the purchaser, nor could the United States be compelled to make titles.

Without admitting or denying this proposition, I think it may with reason be affirmed, that a sale by the government forms an exception to the rule.

It is to be presumed, that a government contract-

[a] 1 Ves. Ch. Rep.

[b] 7 idem.

[c] 10 idem.

ing with its citizens, will act in good faith. It is a matter of history and public notoriety, that a legal title, in pursuance of law, is uniformly granted by the United States to the purchaser or his representatives, on the making of full payment for the land. The prospect or liability of forfeiture, will operate as a means of coercion to compel the purchaser to pay the subsequent instalments as they fall due. It is true, he has his election either to obtain a complete title by making full payment, or to forfeit the money which he has paid, together with his imperfect right to the land. This is a considerable penalty, and must have a good effect in coercing the purchaser to punctuality in payment.

But although the purchaser, in his life-time, might have forfeited the land to the United States, by failing to pay the purchase money as it fell due, yet having devised the land, and died before a forfeiture took place, it is plain, he did not intend it to be forfeited, but intended that it should be paid for out of his estate.

In pursuance of this intention, it was the duty of the executor, to have prevented a forfeiture by an extension of credit under the act of Congress, and ultimately to have completed the payment out of the personal estate of the testator; or, without resorting to an extension of credit, if the condition of the estate would have permitted it without material injury, and a sufficiency of money had been realised, he might have discharged the debt, and perfected the title before a forfeiture accrued.

This was strictly a debt, from the payment of which the executor could not be exonerated without the consent of the devisee, so long as there was a suf-

ficiency for that purpose,    Under the act of Assembly of December, 1816, if the circumstances of the estate required it, by applicationto the county court, the executor would have been empowered to sell property of the testator in order to complete the payment.

We are all of opinion, that the complainants are entitled to relief in a Court of Equity ; that the executor, (or rather the administrator with the will annexed,) for the use of the devisee and her heirs, ought to re-purchase the same land, or other land in the same vicinity, equal in value and quantity, or if this cannot be effected, without material injury to the rights of others interested in the estate, then an equivalent in money ought to be settled on her and her heirs.

But, in as much as the testimony taken in the case was rejected by the Circuit Court, and has not been submitted to the consideration of this Court, and as several material facts are necessary to be ascertained before a final decree can be pronounced, this Court have not sufficient data to render that decree which the Circuit Court should have rendered. To the end, therefore, that all necessary facts may be ascertained, so as to enable the Circuit Court to pronounce a final decree, it is now ordered and decreed by this Court, that the decree be reversed, and the cause remanded, and that the costs be paid out of the testator's estate.

LIPSCOMB, C. J.—PERRY, J. and TAYLOR, J. not sitting.