# Vandiver & Co. *v.* Pollak.

*Bill for Contribution between Joint Tort Feasors.*

1. *Contribution between joint tort feasors.*—The law will allow contribution between joint tort feasors, when honestly believing they are pursuing a lawful course, they do what is apparently lawful, and the wrong inflicted arises from an inference of law and is not the foreseen result of the wrongful act.

2. *Same; between creditors wrongfully levying attachment on property of third person.*—If two creditors acting together attach and sell goods sold by their debtor to another, under the honest belief that such sale is void, and one of them is compelled to pay a judgment recovered against him, by the vendee for wrongful seizure and sale, he may enforce contribution from the other. (HEAD, J., and COLEMAN, J., *dissenting.*)

APPEAL from Montgomery Chancery Court.

Heard before Hon. JOHN A. FOSTER.

I. Pollak filed a bill against W. F. Vandiver & Co., to enforce contribution. The defendants assigned as grounds of demurrer that the bill showed that complainant was a joint

trespasser with defendants in the acts for which complainants had been compelled to pay, and also moved to dismiss the bill for want of equity.

TOMPKINS & TROY, for appellant, contended that this case was clearly within the rule that there can be no contribution between joint tort feasors, citing *Merriweather v. Nixon*, Term R., 186; *Spalding v. Dukes*, 42 Vt., 343; *Hunt v. Lam*, 9 Md. 248; *Churchell v. Holt*, 131 Mass., 67; *Andrews v. Murray*, 33 Barb., 354.

ROQUEMORE, WHITE & DENT, for appellee, in reply, cited 4 A. & E. Enc. of Law, 12; *Jacobs v. Pollard*, 10 Cushing (Mass.) 287; s. c. 57 Am. Dec. 105; *Bailey v. Bussing*, 28 Conn., 455; *Moore v. Appelton*, 26 Ala. 633; *Armstrong & Co. v. Clarion Co.*, 66 Penn. St. 219; *Acheson v. Miller*, 2 Ohio St., 203; s. c. 59 Am. Dec. 663; *Goldsborough v. Darst*, 9 Brad. (Ill.), 205; *Sherner v. Spear*, 92 N. C., 148; *Horback v. Elder*, 18 Penn. St. 33.

HEAD, J.—It must be received, as the general rule, that no right of contribution exists between joint tort feasors.— See 4 Am. & Eng. Encyc. of Law, 12, and the authorities there collected. The courts, however, have declared numerous exceptions to it; to such extent, indeed, as that the judge delivering the opinion of the court in *Goldsborough v. Darst*, 9 Brad. (Ill.), 205, saw fit to say that there are so many exceptions to the rule that it has ceased to be a general one. The appellees insist that the case made by this bill ought to be declared an exception; and that is the question for our decision.

The appellants, Vandiver & Co., and appellee, Pollak, sued out, severally, attachments against the estate of Harmon Bros., their debtors, to enforce collection of their several debts; and acting conjointly, caused the sheriff to levy the attachments, simultaneously, upon a stock of goods which had belonged to Harmon Bros., with which they had been carrying on mercantile business, but which that firm, shortly before the levy, had sold and delivered to John Harmon, their father. Subsequently, other creditors of Harmon Bros. sued out attachments which the sheriff levied upon the same goods, in subordination to the levies of appellants and appellee. The goods were all sold by the sheriff, who, in the course of proceedings, paid the proceeds to the different creditors, appellants and appellee receiving payment in full of their respective demands. It is not controverted

that if these levies, made by the joint procurement of the appellants and appellees' and at the same time, were wrongful, they became joint trespassers upon the possession of John Harmon.—*Sparkman v. Swift*, 81 Ala. 231.

John Harmon, by separate actions in trespass against each, sued the several attaching creditors for the alleged wrongful seizures. The action against Pollak, the appellee, was tried and resulted in a verdict and judgment against him for the entire value of the goods seized and converted, which judgment he was compelled to pay, and did pay, amounting with interest and costs, to the ·sum of $6,100.00. Pollak's claim against Harmon Bros. amounted to $723.45, and that of Vandiver & Co. to $321.11. After the recovery and satisfaction of the judgment of John Harmon against Pollak, the other actions, in trespass, were dismissed. The goods sold and delivered by Harmon Bros. to John Harmon constituted all the property of the former subject to levy and sale, and they became, then, and were thereafter, insolvent. The bill is filed by Pollak to enforce contribution from Vandiver & Co., and the facts relied on as bringing the case within exception to the general rule, that there is no contribution between wrong-doers, are as follows : When they, the appellants and appellee, became informed of the facts of the sale by Harmon Bros. to their father, John Harmon, they undertook to inquire into the legality and validity of the same, with the view of enforcing the collection of their debts out of the goods conveyed, if the sale upon inquiry should be found to be void. To this end, they employed an attorney who went to Union Springs, where Harmon Bros. lived, and had carried on business, and where the sale was made, and inquired into the facts, and reported to appellants and appellee that, from an examination of the facts and circumstances attending the transaction, he honestly believed that the sale was void, because the consideration therefor was simulated and fictitious. The bill alleges that this information was imparted to appellants and appellee, and they became fully convinced that the sale was void for fraud, and that the goods were the property of Harmon Bros., and not of John Harmon, and liable to the satisfaction of their claims ; and they, thereupon, procured the issuance of their attachments and had the sheriff to levy them upon said goods ; that in doing so, they acted in good faith, under the belief that the goods belonged to Harmon Bros., and not to John Harmon, and that they were engaged in a lawful act in undertaking to subject the same to the payment of their debts ; that they had no unlawful intention to vio-

late the rights of John Harmon, nor did they act in willful disregard of his rights in the premises, but acted only in good faith under the belief that John Harmon's claim to the goods was actually fraudulent.

As the question here presented has not heretofore been raised or adjudicated in this court, we will notice some of the decisions in other jurisdictions.

In *Adamson v. Jarvis*, 4 Bing. 66, defendant having property, in his possession, represented to plaintiff, an auctioneer, that he had authority to dispose of such property, and requested plaintiff to sell it for him. Plaintiff, believing the representation, and not knowing the property was not defendant's, sold it, in pursuance of the request, and accounted to defendant for the proceeds. For this he was sued by the true owner, held liable and compelled to pay damages. He sued for indemnity. Held, entitled to recover. Here, it will be observed, upon well settled principles of law, plaintiff and defendant were liable to the owner as joint wrong-doers; yet the court said, referring to the case of *Merriweather v. Nixon*, 8 Term. R. 186, which decided that one wrong-doer could not sue another for contribution, that the decision would not affect cases of *indemnity* where one man employed another to do acts, not unlawful in themselves, for the purpose of asserting a right. "Every man," said the court, "who employs another to do an act which the employer appears to have a right to authorize him to do, undertakes to indemnify him for all such acts as would *be lawful*, if the employer had the authority he pretends to have. A contrary doctrine would create great alarm." And the learned judge declares that "from reason, justice and sound policy, the rule that wrong-doers can not have redress or contribution against each other, is confined to cases where the person seeking redress must be presumed to have known that he was doing an unlawful act."

In *Betts v. Gibbons*, 2 A. & E. 57, the principle applied is about the same as in *Adamson v. Jarvis, supra*. The defendant, a manufacturing chemist at Neath, sold goods to Nyren & Wilson, in London, on the latter's order, and sent the cargo from Neath to Bristol, to be from thence forwarded by the plaintiffs' boats to London, there to await defendant's orders, plaintiffs being bargemasters and wharfingers at Bristol and London. Defendant wrote plaintiffs that the goods, in controversy, should be for Nyren & Wilson, and instructed them to separate these goods from others shipped at same time and intended for other parties, and have them taken away distinct from any others. Nyren & Wilson,

[Vandiver & Co. v. Pollak.]

after arrival of the goods in London, applied for and received from plaintiffs, two of the ten casks constituting the consignment. Later, while the remaining eight casks were still in plaintiffs' possession, Nyren & Wilson, having failed to accept or pay defendant's draft on them for the price, defendant gave directions to plaintiffs not to deliver them remaining casks to Nyren & Wilson, but to deliver them to the order of one John Elliott, which they did. At the suit of assignees of Nyren & Wilson, plaintiffs were forced to pay for the goods, and sued defendant for indemnity. Held, entitled to recover. It was argued that plaintiffs and defendant being joint wrong-doers in withholding the goods from Nyren & Wilson, neither contribution could be claimed, nor promise of indemnity implied among them. The court said that an agreement to indemnify was implied. "I do not see," said the judge, "the distinction between contribution and indemnity; but it appears to me there is nothing to prevent either in this case. It was perfectly competent to the defendant to say, 'I claim the goods; do you keep them for me;' and the plaintiffs were not bound to exercise their judgment on this claim, though they were acquainted with all the facts. If they were acting *bona fide*, I can not conceive what rule there can be to hinder the defendant from being liable for the risk." It seems the defendant in stopping the delivery to Nyren & Wilson, was attempting to enforce a supposed right of stoppage *in transitue*, but which, under the circumstances, was insupportable. The court further say, in this case, that the case of "*Fletcher v. Harcot*, 4 Bing. 72, shows that there may be an indemnity between wrong-doers unless it appears that they have been jointly concerned in doing what the party complaining knew to be illegal. The act there done was a very strong one, yet though it turned out to be entirely wrong, the indemnity was allowed. Now, whether the promise there was express or implied, it would have equally been void if against public policy. That case seems to me to go to this full extent; that where one party induces another to do an act which is not legally supportable, and yet is not clearly in itself a breach of law, the party so inducing shall be answerable to the other for the consequences."

In *Jacobs v. Pollard*, 10 Cush. 287, (57 Am. Dec. 105) the plaintiff in good faith, believing he was acting in legal right and proceeding regularly, seized cattle on his land, thought to be damage-feasant, and delivered them to defendant, as field-driver, who, at his instance, sold them at auction and received the proceeds. The owner recovered judgment in

trespass for the seizure against plaintiff and defendant jointly, and plaintiff, on execution, paid the judgment and sued defendant, the field-driver, to recover the proceeds of the auction sale yet in his hands. Defendant defended upon the plea that they were joint trespassers, but the defense was held bad. The court said: "It is undoubtedly the policy of the law to discountenance all actions in which a party seeks to enforce a demand originating in a willful breach or violation, on his part, of the legal rights of others. Courts of law will not lend their aid to those who found their claims upon an illegal transaction. No one can be permitted to relieve himself from the consequences of having intentionally committed an unlawful act by seeking an indemnity or contribution from those with whom, or by whose authority, such unlawful act was committed. But justice and sound policy, upon which this salutary rule is founded, alike require that it should not be extended to cases where parties have acted in good faith, without any unlawful design, for the purpose of asserting a right in themselves or others, although they may have thereby infringed upon the legal rights of third persons. It is only when a person knows, or must be presumed to know, that his act was unlawful, that the law will refuse to aid him in seeking an indemnity or contribution. It is the unlawful intention to violate another's rights, or a willful ignorance and disregard of those rights, which deprives a party of his legal remedy in such cases. It has, therefore, been held that the rule of law that wrong-doers can not have redress or contribution against each other is confined to those cases where the person claiming redress or contribution knew, or must be presumed to have known, that the act for which he has been mulcted in damages was unlawful. . . . There is nothing in the facts of the present case from which it can fairly be inferred that the parties to this suit willfully committed the original trespass, with a knowledge, either actual or to be presumed, that they were thereby violating the rights of the owner of the cattle. They seemed to have acted in good faith in seizing and selling the cattle for the purpose of asserting a legal right in the plaintiff to take them on his land damage-feasant, and to commit them to defendant, as field-driver, who, *virtute officii*, was supposed to have the right to sell them under the plaintiff's authority. Although, in these proceedings, the parties grossly misconceived their legal rights and remedies and committed an aggravated trespass on the property of a third person, yet it does not appear that they acted wantonly with an

intent to infringe on the rights of the owner of the beasts. Their only error was in the mode of enforcing their own rights, and being thereby guilty of an encroachment upon the rights of another."

In a *dictum* in *Acheson v. Miller*, 2 Ohio St. 203, (59 Am. Dec. 663) this language is used : "The rule that no contribution lies between trespassers, we apprehend, is not of universal application. We suppose it only applies to cases where the persons have engaged together in doing wantonly or knowingly a wrong. The case may happen that persons may join in performing an act which to them appears to be right and lawful, but which may turn out to be an injury to the rights of some third party, who may have a right to an action of tort against them. In such case, if one of the parties who has done the act has been compelled to pay the amount of the damage, is it not reasonable that those who were engaged with him in doing the injury should pay their proportion? The common understanding and justice of humanity would say that it would be just and right that each of the parties to the transaction should pay his proportion of the damage done by their joint act ; and we see no reason why the moral sense of the court shall be shocked by such a result."

In *Hobach v. Elder*, 18 Penn. St. 33, several persons were engaged, as copartners, in operating a stage line. By the negligence of a driver, passengers were injured, who sued and compelled plaintiff, one of the copartners, to pay more than his equal proportion of the damages sustained. He then sued one of his copartners to recover contribution and the general rule was invoked, in defense, that between joint wrong-doers there is no contribution. The court held, without any discussion of the rule, that plaintiff was entitled to recover.

In *Armstrong County v. Clarion County*, 66 Penn. St. 218, a public bridge over a stream, on the dividing line between the two counties, was to be maintained at the joint expense of the two counties. Being out of repair, the commissioners of both counties made a joint examination of it, and had some slight repairs made. Not long afterwards, the bridge broke down whilst a traveller was crossing it and severely injured him. He sued Armstrong County and recovered for the negligence of the commissioners. Armstrong County, having paid the judgment, sued Clarion County for contribution. Held, entitled to recover. The court, in discussing the general rule under consideration, quotes from Story on Part. § 220, as follows : "But the rule is to be understood

[Vandiver & Co. v. Pollak.]

according to its true sense and meaning, which is, where the tort is a known, meditated wrong, and not where the party is acting under the supposition of the entire innocence and propriety of the act, and the tort is merely one by construction, or inference of law. In the latter case, although not in the former, there may be, and properly is, a contribution allowed by law for such payments and expenses between constructive wrong-doers whether partners or not." The case of *Pearson v. Skelton*, 1 Mee. & Wels. 504, was cited, wherein it was held that the rule does not apply to a case where the party seeking contribution was a tort feasor only by inference of law, but is confined to cases where it must be presumed that the party knew he was committing an unlawful act. The court concludes its opinion by saying : "The parties plaintiff and defendant are two municipal corporations, jointly bound to keep this bridge in repair. These bodies can act only by their legally constituted agents, the commissioners, who examine the structure and order repair which is done. They erred in judgment, and both were liable for the consequences of that error, and one having paid the whole of the damages is entitled to contribution from the other."

This court in *Moore v. Appleton*, 26 Ala. 633, recognized the rule of *Adamson v. Jarvis, supra*, that when an agent is employed by his principal to do an act which is not manifestly illegal and which he does not know to be wrong (as to take personal property, which although claimed adversely by another, he has reasonable ground, to believe belongs to his principal) the law implies a promise, which may be enforced, of indemnity by the principal for such losses and damages as flow directly and immediately from the execution of the agency.

There are many other cases on this subject, which may be found upon the briefs of counsel, but it is believed the foregoing extend the relaxation of the general rule as far as can be found in any of them. The general principle the writer extracts from the authorities is, that if the wrong-doers, in doing the act, do what is apparently lawful, and honestly believe they are pursuing a lawful course, and the wrong inflicted upon another arises out of their conduct by construction or inference of law, and is not the probable or foreseen result of the wrongful act, the law will allow contribution. The case of *Jacobs v. Cushing, supra*, he thinks, fairly illustrates the principle. There the plaintiff found cattle upon his land which he honestly believed to be damage-feasant. The right to restrain damage-feasant was a remedy given by

[Vandiver & Co. v. Pollak.]

law.　He undertook to pursue that remedy, but ignorantly, yet innocently, missed its lawful pursuit, and thereby, by construction of law, became a trespasser.　When he acted no denial of his right to distrain was pending, and no actual possession of the cattle, in the owner, being openly and knowingly to the plaintiff, asserted against the distress or manner of pursuing it; nor were there facts to lead plaintiff to anticipate that such opposition to, or repudiation of the remedy he was attempting to pursue, would follow.　He believed he was doing that which the owner must needs, of lawful course, acquiesce in.

The writer of this opinion thinks the present case does not come up to the principles of law which allow contribution. Appellants and appellee knew that Harmon Bros. had made sale and delivery of the goods to John Harmon in asserted payment of an indebtedness, and that he claimed the goods as his own against all other creditors.　They knew he denied, or would deny, all fraud in the transaction; and asserted, or would assert, the *bona fides* and validity of his purchase. They knew, also, that unless they were able to establish fraud, his title and possession were good; and that to seize and take the goods from him would be a trespass.　Upon these questions these parties and John Harmon were, at the time, in open and known antagonism.　If the sale was believed to be fraudulent, the law furnished the creditors ample remedy and redress, and in a way to try the disputed questions between them, and, at the same time, conserve the rights of all parties without resorting to a forcible seizure and application of the goods to the payment of their debts. The courts were open to them to hold John Harmon a trustee, *in invitum*, for them, to the extent of the value of the goods, if there was fraud in his purchase; and if it was necessary to their security that the goods be kept in hand, they could have been protected by the appointment of a receiver.　If John Harmon was solvent (and there is no averment that he was not) the law afforded the creditors, also, the ample and inexpensive remedy of reaching the goods by garnishment, wherein the rights of the parties could have been tried without disturbing the possession of John Harmon, until those rights were judicially determined. But the appellants and appellee did not see proper to pursue these lawful remedies, but knowingly and premeditatedly took the risk of establishing fraud in the sale, and proceeded to make forcible seizure of the goods and application thereof to the payment of their debts, by the extraordinary process of attachment, wherein the asserted title of Harmon could

[Ohlander v. Dexter.]

not be determined by judicial judgment or decree. In taking this risk, and pursuing this course, they knowingly disregarded the rights of John Harmon, if it should turn out that his title and possession were honest as he claimed they were, for although they believed the sale was fraudulent, yet they knew and intended, by the very course of proceeding they adopted, that the goods would and should be arbitrarily taken and applied to the payment of their debts, whether Harmon's claim of ownership was honest or dishonest; and without giving him an opportunity to show the honesty of his claim, except by the assertion of the independent remedies and redress which the law gives for the wrong done him. Under these circumstances, the writer is of opinion that the trespass was knowingly committed, in that sense which deprives the complainant of the right to contribution. A majority of the court, however, entertain a contrary opinion and hold that the case made by the bill forms an exception to the general rule and that the right to contribution exists. The order of the chancellor overruling the demurrers and motion to dismiss the bill for want of equity was, therefore, free from error and is affirmed. The question, argued by counsel, whether the bill sufficiently avers the wrongfulness of the levies; that is to say, whether it sufficiently shows that the goods were not subject to the attachments, is not raised by the demurrer. If the bill is defective in that respect, it may be amended.

Affirmed.

COLEMAN, J.—I concur in the conclusion reached by Judge Head, and am of opinion, that the demurrer to the bill was improperly overruled.