(130 So. 801)

# FULENWIDER v. BIRMINGHAM TRUST & SAVINGS CO. et al.

## 6 Div. 596.

Supreme Court of Alabama.

Oct. 30, 1930.

Rehearing Denied Nov. 28, 1930.

Benners, Burr, McKamy & Forman, of Birmingham, for appellant.

Cabaniss, Johnston, Cocke & Cabaniss, of Birmingham, for appellees.

THOMAS, J.

The bill was by the executors and trustees for the removal of the administration and construction of the will.

The respective pleadings sought and consented for the removal of the administration of said estate from the probate court to the circuit court in equity, and sought construction of the will of decedent to enable the executors and trustees to properly proceed with the administration and execution of the trust created.

Leslie Fulenwider and his infant son, Howard, were the sole beneficiaries of said will. The former was the only brother, and the latter the nephew, of decedent. The trial court's construction was more favorable to the rights of the minor than the father; hence the appeal and summons and severance to the guardian of the minor.

Item 2 introduces the ambiguity that made necessary construction.

Items 2 and 3 read as follows:

"Item Two. I hereby give, devise and bequeath unto my brother, Leslie Fulenwider, my interest in all property owned jointly by us at the time of my death. This expressly includes my interest in the estate of my father and those parcels of land and business interests owned jointly or in partnership by my said brother and me, and/or others

"Item Three. All the rest and residue of my estate wherever situate, either real, personal or mixed, I hereby give and devise to the Birmingham Trust & Savings Company, a banking corporation of Birmingham, Alabama, and J. A. Simpson, in trust, however, for the use and benefit of my nephew, Howard Fulenwider. I authorize and instruct my said trustees to collect this property and to hold the same either in kind or in converted form as to them seems best, and after deducting the expenses of the trust pay the income therefrom or such part thereof as they shall deem necessary toward the education and support of my said nephew, said payments to be made at such times and in such amounts as the said trustees shall deem proper. When my said nephew arrives at the age of twenty-one years the corpus of this trust, together with all undisbursed income, if any, shall be turned over to him, free from trust," etc.

The bill averred, and the evidence showed, that the testator owned the following described property at the time of his death:

(1) Certain real estate located in the city of Birmingham, which he and his brother Leslie inherited from their grandfather, each being the owner of an undivided one-half interest therein, the value of which was appraised at $120,000.

(2) Other real estate, some of which was owned by him in severalty and some jointly with other persons than Leslie Fulenwider.

(3) The proceeds of policies of life insurance on the life of testator payable to his estate.

(4) An undivided one-half interest in the assets of the Tucker Motor Company, a partnership consisting of testator and Hayse Tucker.

(5) One hundred and fifty shares of the capital stock of the Fulenwider Motor Company, a corporation.

(6) Sixty-two and one-half shares of the capital stock of the Morgan County Motor Company, a corporation.

The real estate owned jointly by the testator and his brother was subject to a mortgage given to secure an indebtedness of $60,000, evidenced by a note made by the testator and his brother, Leslie Fulenwider, said mortgage and note bearing date of December 6th, 1927, and payable on the 6th day of December, 1928, which was by agreement extended to mature on the 6th day of June, 1929. The proceeds of said note for $60,000, as alleged in the bill, were delivered to testator and his brother Leslie, and each took and appropriated to his own use one-half thereof.

Leslie Fulenwider by his original answer admitted the averments of the bill. In and by his amended answer he contended that the executors should be directed to pay all of the debts of testator out of the personal property of the estate, and that he (Leslie Fulenwider) should be decreed to be the sole beneficiary, not only of the real estate owned jointly by him and his brother, but also of the testator's interest in all real estate owned jointly by him and others, as well as the testator's interest in the partnership of Tucker Motor Company, the shares of stock of the Fulenwider Motor Company, and of the Morgan County Motor Company. His contention was that the will gave him the whole estate of the testator, except life insurance payable to the estate, and except real estate owned by the testator in severalty. It was further claimed by such answer that the executors should be required to pay out of the personal estate one-half of said mortgage indebtedness of

$60,000, and that the other indebtedness of the estate secured by mortgages on real estate, owned jointly by testator and others, should likewise be paid out of the personal estate, if sufficient for that purpose, and, if not, resort for payment should be had to the real estate owned in severalty which was given to the executors as trustees for the infant defendant.

The lower court in its decree ascertained and declared:

(1) That none of the personal property owned by the testator at the time of his death passed to Leslie Fulenwider, but to Howard Fulenwider.

(2) That the undivided one-half interest of the testator in the real estate owned jointly by him and Leslie Fulenwider passed to Leslie Fulenwider, subject to the payment of the mortgage indebtedness of $60,000.

(3) That except as to the real estate owned jointly with the testator and Leslie Fulenwider, all other property of the testator passed to the executors under the will for the use and benefit of Leslie Fulenwider's infant son, Howard Fulenwider.

Counsel for the minor thus state the questions:

The controversy as between Leslie Fulenwider and his infant son is with respect to three questions only, viz.:

First. Was it the intention of the testator to give Leslie Fulenwider any of his personal property?

Second. Was it his intention to give to Leslie Fulenwider his interest in all the parcels of real estate owned by testator and others or third parties?

Third. Was it his intention to give to his brother his undivided one-half interest in the property owned by him and his brother jointly, freed of one-half of the mortgage indebtedness on the whole of such real estate?

The contention in behalf of the minor defendant is that it was not testator's intention to give to Leslie Fulenwider any of the personal estate, unless there should be some business interest in which they were jointly interested at the time of his death. It is further contended that testator did not intend to give to his brother his interest in parcels of real estate owned by him and other persons; nor to give him the one-half interest in the real estate owned by testator and his said brother freed of one-half of the mortgage indebtedness thereon.

■ It will be observed that under the first sentence in item 2 of the will quoted above, the testator gives to his brother his interest in all property owned "jointly by us at the time of my death." Such was the devise or bequest to the brother. The following sentence is merely explanatory of what precedes; it was not intended by such following sentence to enlarge the gift made in the first sentence: "This expressly includes (as the will specifically recites or declares) any interest in the estate of my father (as to which, in point of fact, he had no interest that he could bequeath or devise) and those parcels of land and business interests owned jointly, or in partnership by my said brother and me, and/or others." When it is remembered that the major purpose of this provision of the will, as indicated in the first sentence, is to give to his brother his interest in all property owned jointly by them at the time of his death, the following sentence could mean nothing more than that the testator meant to include property owned jointly by them and others as well. If it had been his purpose to give to his brother his interest in property owned by him and others, in which the brother had no interest, other language would have been chosen to convey his enlarged meaning. It would have been simply that, I also give to him all or any interest in property owned by him and me and, others jointly, as well as any interest in property owned by me and others jointly. This devise and bequest was not so made as to properties owned by testator and others than with testator's brother.

At the time of the making of the will and at the time of testator's death, he and said brother owned no property jointly, except the real estate inherited from their grandfather. It may be inquired, what was the purpose of the second sentence in said item 2? He appeared to think that he had an interest jointly with said brother in the "estate of (his) my father," which was a limited estate "for his life only, if he should die before his brother." Such is the evidence. In the next place, he and his brother had at one time been jointly interested in several business enterprises and, since they might thereafter be again jointly interested in business enterprises, he wished to provide for a gift to his brother of his interest in any such business, if it should appear and where they were jointly interested. It is reasonable to suppose that such may have been the case and his intent. However this may be, he did not intend by the clause in question to give to his brother any property in which they were not jointly interested. Such is the fact as to the one hundred and fifty shares of the capital stock of the Fulenwider Motor Company, and the sixty-two and one-half shares of the capital stock of the Morgan County Motor Company, which he alone owned in his own right, and which were business interests owned jointly by testator and others than the brother. This is the result and so held by the trial Court as to the personal estate.

This statement of facts and construction applies with equal force to the real estate owned jointly by the testator and others than his brother, since his purpose was to give to that brother only such real estate as they had a joint interest in. No controlling reason whatever appears for decreeing to the brother the testator's interest in real estate in which the brother had no joint interest. Under the contention of Mr. Fulenwider, not only would such interest pass to him under the will, but the several mortgage debts that are liens on such interest, as well as all other debts of the testator, should be paid out of the personal estate, thereby depleting the gift to his nephew and possibly defeating the purpose of the testator to provide a competency for his nephew and namesake. Such a result is entirely at variance with the declared and general purpose and intention of the testator.

■ It is asserted by Mr. Fulenwider that he is entitled to take the gift of his brother's interest in their jointly owned real estate, relieved of one-half of the $60,000 incumbrance thereon, and at the expense of the minor's interest in the estate. In the construction of a will, the intent of the testator, to be gathered from the will itself, is the rule which transcends all other rules. Ralls v. Johnson, 200 Ala. 178, 75 So. 926. No other rule need be sought for the construction of a will where testator's intent appears from the will itself, if not in the light of the circumstances surrounding the testator at the time the will is made. Fowlkes v. Clay, 205 Ala. 523, 88 So. 651. If the court by putting itself in the testator's position can ascertain from the language of the will that it was not intended that the personal estate should be subjected to the payment of the mortgage indebtedness on the real estate devised, then such real estate must be held to be the primary fund out of which the mortgage indebtedness is to be paid. At the time the will was made, the mortgage for $60,000 had been given. The indebtedness, which the mortgage secured, was not that of the testator alone, but was just as much the debt of Leslie Fulenwider.

■■ It is true that each of them would be entitled to contribution from the other in event of payment, and that as between themselves each owed only one-half of such mortgage indebtedness. The case that we have here, therefore, is to be distinguished from one where the encumbrance was created by the testator alone. It had been created by the brothers, and one gave the other his interest as it was and as so incumbered. The property being worth $120,000, and Leslie Fulenwider being liable to the mortgagee for the whole of the indebtedness, there would be no inequality or want of fairness in requiring such grantee or devisee brother to discharge the whole encumbrance. The will gives to Leslie Fulenwider, not an undivided one-half interest in the property, but, using the language of the will, "my interest in all property owned jointly by us at the time of my death." We have indicated that such interest so given was an undivided one-half interest in an equity of redemption merely—the interest so incumbered and diminished by the mortgage. If he had made quitclaim of such interest, the grantee would have taken such interest subject to the mortgage indebtedness. The result of the devise is the same, in view of the fact that it nowhere appears from the will that said interest was to be cleared of lien and such indebtedness was to be made a charge against his personal estate. To the contrary, the first item of the will gives the executors power to sell any of the property, real or personal, for the payment of debts. At common law, in the absence of a contrary intent, as disclosed by the will, the personal estate was the primary fund which had to be resorted to for the payment of debts.

This rule has been changed in some states by statute. In New York, for instance, it is provided by statute that whenever any real estate subject to a mortgage executed by an ancestor or testator shall descend to the heir or devisee, such heir or devisee shall satisfy and discharge the mortgage out of his own property, without resorting to the personal estate, unless there is an express direction in the will for the payment of such encumbrance. 5 Am. L. Rep. 490, 506, and cases there cited.

Where the common-law rule prevails, it has been held that if the circumstances of the case are such as to indicate the testator's intention not to charge the personal estate with the payment of the lien upon real estate, even when there is no express exoneration of the personal assets, the personal estate will not be charged primarily with the payment of such lien. Draper v. Brown, 153 Mich. 120, 117 N. W. 213. In the last-cited case the testator did not own a full interest in the real estate, which was subject to a mortgage, and the mortgage indebtedness exceeding the amount of the personal estate disposed of by the will, it was held not to be the intention of the testator that the executor should pay the mortgage indebtedness out of the personal estate. So, also, by that case a distinction is made between the right of an heir or devisee of real estate subject to a mortgage where the mortgage was created by the decedent himself, and where he acquired the land subject to a mortgage or balance due on the purchase price. The reason for this rule is (1) that of the obligation of the testator to pay his primary debt, and (2) that the lien of the mortgage is merely security therefor.

Of the ambiguity in question, aided by the evidence in an ascertainment of the intent of the testator, it is well to observe that the

testimony of Hayse Tucker is to the effect that testator was his partner in business; had talked to him about his nephew, Howard Fulenwider, and had expressed a very keen interest in him because he was his namesake and because he was sickly. In reply to the question as to whether he had talked with Leslie as to the habits of his brother or the fear that he had that his brother would dissipate his estate, he said that he had, and that the testator had often expressed the wish that Leslie would return to Birmingham and engage in some productive occupation and discontinue his interest in literary pursuits and stage productions, and interests of that type. In answer to the question as to whether testator had expressed a fear that his brother Leslie might lose his property by reason of his habits or manner of living, he said, "I can't recall that"; he did express "the opinion that he either might make or lose a big sum."

The cases cited from this jurisdiction are not decisive of this question as payment of the mortgage. In Green et ux. v. Moore, Executor, etc., 1 Stew. & P. 212, the balance of purchase money for land was required of payment from the general estate to equalize the "legacies given off by the said will to A's other children." It was said: "In pursuance of this intention" to be found in the will, such payment was to be required to prevent forfeiture and to equalize legacies.

In Morgan v. Watkins, 214 Ala. 671, 108 So. 561, a liberty bond was given Miss Morgan which was charged with payment of the debts of testator and the expenses of the administration, if the primary fund proved insufficient; held, that a mortgage was such debt and necessary to be paid out of the bond. Colbert v. Daniel, 32 Ala. 314, 329.

And the same rule was applied in Powell v. Labry, 210 Ala. 248, 250, 97 So. 707, where it was held that "in the absence of an expressed contrary intent of the testator," as to payment of debts and legacies, the loss falls upon the residuary estate.

In this case the will speaks, as we have indicated and as illustrated by the pertinent evidence. And the question for decision is one of testamentary intention; not that of the application of the rule of exoneration as affecting a surety's secondary liability. Hudson Trust Co. v. Elliott, 194 Ala. 441, 69 So. 631. See general authorities in 5 A. L. R. 488, et seq.

The claims of the First National Bank, American-Traders Bank, Birmingham Trust & Savings Company, the note to the City National Bank of Tuscaloosa, and those to Mrs. Frances Barton, P. J. Barrett, A. Pearson, Realty Mortgage Company, and the Fourth National Bank, etc., will approximate a large sum, of which testator was well aware, and if all are paid out of the personal properties of the estate, they would greatly reduce or consume the same. Certain policies of insurance are held by trust agreements of the testator with others not beneficiaries under the will, thus taking the same from the general class of personal property of the estate. When the testator made his will, he was well aware of the legal effect of his several classes of property, his business agreements, and his joint and several liabilities. He well knew the legal and practical effect of the hypothecation of policies of insurance pursuant to partnership agreements and liabilities to the end of that of his declared trust, that of the subjection of properties to the payment of the balances due by him on its purchase price, the relation of principal and surety and their respective liabilities, the due administration of estates, and payment of presented and proved debts, and its distribution as per the terms of the will.

The expressed and patent primary scheme and intent of testator as "one consistent whole" (Ralls v. Johnson, 200 Ala. 178, 75 So. 926), was (1) after the payment of just debts and the gift to his brother Leslie of his interest (such as he had, Leek v. Kahn, 213 Ala. 365, 105 So. 185) in all property "owned jointly" by testator and said devisee or legatee, then (2) to give his namesake and nephew the "rest and residue" of his entire estate. This primary purpose will not be defeated by inference and the requiring of the payment from such "residue" of any sum of $60,000 and interest to clear the property of the mortgage given by the two brothers and that produced the fund or proceeds that were equally divided between them.

As stated, the First National Bank has duly presented its claim for the $60,000 against the estate of testator; and when paid, if by the executors, the rule of contribution will compel repayment of the aliquot part thereof from the funds and properties of appellant, if there "is a common right," and if "the burden is also common" to both brothers as mortgagors. Streety & Co. v. McCurdy, 104 Ala. 496, 16 So. 686; Eureka Coal Co. v. Louisville & N. R. Co., 219 Ala. 286, 122 So. 169; Vandiver & Co. v. Pollak, 97 Ala. 467, 12 So. 473, 19 L. R. A. 628; Id., 107 Ala. 547, 548, 19 So. 180, 54 Am. St. Rep. 118.

We have sought to answer the question, what was the intention of testator as to the residuary estate to the nephew (Powell v. Labry, supra); that it was not to be subjected to the payment of any part of the mortgage of $60,000, as between the father and son.

Thus understood as stated, the decree of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.