## STEELE *vs.* MEALING.

1. A mortgage given to one surety, for his indemnity against a particular debt, enures to the benefit of his co-surety; and the mortgagee cannot apply the funds to any other debt than that specified in the mortgage, to the prejudice of his co-surety.

2. If the mortgage, in such case, contains a power of sale upon default being made in the payment of the debt, and the mortgagee, after the law day of the deed, permits the property to be levied on and sold by the sheriff, under execution against the mortgagor, he is chargeable, at the suit of his co-surety, with its value; but the latter must allege such neglect in his bill, or he cannot charge the mortgagee with it.

3. The mortgagor's cotton having been levied on, the mortgagee became surety on the replevy bond, and the cotton was delivered to the mortgagor, who shipped it to Mobile, where it was sold by the consignees, and the proceeds were applied by them to the part payment of a debt due to them by the mortgagor, on which the mortgagee was surety, and which was one of the debts secured by the mortgage: *Held*, that the mortgagee was not entitled to a credit for what he was compelled to pay on the replevy bond, as against his co-surety on the other mortgage debts.

4. When the mortgagee repudiates his trust, and compels his co-surety to file a bill against him to establish it and make him account, he is not entitled, on the taking of the account, to commissions for selling the property.

ERROR to the Chancery Court of Lowndes.
Heard before the Hon. J. W. LESESNE.

THIS bill was filed by Jonathan Mealing against David A.

Steele, for an account and contribution of a certain mortgage fund alleged to be in the defendant's hands and partly claimed by the complainant. The bill alleges, that said complainant and defendant, some time before the year 1845, became joint sureties of one A. Borland, on a note for $9004 14, held by the Branch Bank at Montgomery (but the record nowhere states the date of this note, or the time when it became payable); that said Borland, after this note had been given, executed a mortgage to said defendant, conveying to him a large tract of land and several negroes, more than enough to pay said debt, as an indemnity against his liability on account of said suretyship; that judgment was afterwards obtained against said complainant on said debt, and he has been compelled to pay one half of it, amounting to the sum of $5044 49; that the property conveyed by said mortgage was more than enough to pay said entire debt, and that defendant has realized, or ought to have realized from it, the amount of the debt. The bill alleges, that said mortgage enured to the benefit of complainant, as co-surety with defendant on said debt, and asks contribution and an account.

The mortgage, which is made an exhibit to the bill, purports to have been made for the purpose of securing the payment of a debt of about $1,400, due to said defendant from said Borland, and also to indemnify him against his suretyship on said note for $9004 14, on which complainant was co-surety with him, and on another note for about $3,100, held by Rives, Battle & Co. of Mobile; making the aggregate amount of the liabilities secured by the mortgage about $12,000. It gives the mortgagee full power to sell the property, after ten days' advertisement, on default being made in the payment of any of the secured debts.

The defendant answers the bill, denying, in the first place, his liability to account to complainant, because the security was made to himself and for his benefit, and insisting, in the second place, that, if the said mortgage enures to the benefit of complainant at all, it can only be available to him after defendant has been reimbursed all moneys which he has paid out for said Borland; that the account, taken in this way, would show a considerable balance in defendant's favor, and the complainant, therefore, would get nothing.

The case was brought to a hearing, and a decree of reference was made, in which the following principles, among others, were settled : 1. It is conceded, that a debtor, in making a mortgage to secure the payment of a debt, may expressly provide for the indemnity of one surety, to the exclusion of a co-surety ; but such preference must be clear and palpable on the face of the paper, and will not be allowed when the intention to make it rests upon inference merely ; that no such intention was expressed in the present case, and consequently none would be inferred. 2. That the defendant was a trustee for complainant, his co-surety, and was chargeable, therefore, as such, for any loss of the trust estate caused by his negligence or mismanagement. 3. That the defendant could not apply the mortgage property to any other debts than those specified in the mortgage, to the exclusion or prejudice of complainant's rights to the fund. 4. That all the debts specified in the mortgage stand upon an equal footing, including the debt due to the Bank, and all are to be paid *pro rata* out of the mortgage property.

The defendant also contended, that he was entitled to a credit of some $1400 on the trust fund, which was denied by the complainant. The facts in relation to this item, appear to be as follows : Borland had a quantity of cotton on hand, which he was about to ship to Mobile, when it was levied on by the sheriff of Lowndes, under an execution in his hands ; the defendant became surety for Borland on a replevy bond for the forthcoming of the cotton, and the cotton was thereupon re-delivered to Borland, who shipped it to Mobile to Rives, Battle & Co. ; the consignees sold the cotton, and applied the proceeds (about $2000) to the part payment of the said note for $3,100 which they held on said Borland, on which defendant was surety ; the defendant was compelled to pay the execution under which the levy was made, amounting to about $1400, and he insists that this amount should be allowed him as a credit on the mortgage fund. The court intimated, in the decree of reference, an opinion against the allowance of this credit, but reserved the determination of the question until the final decree, and directed the master to report the facts specially in reference to this transaction. The final decree confirms the opinion previously intimated in the order of reference.

The master reported, that the fund produced from the mortgage property, for which the defendant was liable, amounted to $9598 10, which was to be applied *pro rata* to the several mortgage debts ; and of this amount the complainant was entitled to $3733 66, which, with the interest thereon to the time of stating the account, amounted to the sum of $5288 83. To the account as stated by the master, the defendant took the following exceptions : 1st, that he should not have been charged with ten of the mortgage negroes, which were sold by the sheriff of Lowndes under executions junior to the date and record of the mortgage ; 2nd, that he should not have been charged with four other negroes which were sold under similar circumstances ; 3rd, that he ought to have been allowed, as a credit on the mortgage fund, the said sum of $1400, paid by him on account of said replevy bond, as above stated ; 4th, that he was entitled to commissions for selling the mortgage property, which the master refused to allow him. These exceptions were all overruled, and the report confirmed; and a final decree was rendered accordingly.

The errors assigned are : 1st, the court erred in rendering the final decree; 2nd, in decreeing that the defendant should make contribution to the complainant; 3rd, in charging the defendant with the value of the mortgage slaves which were lost by want of diligence ; 4th, in overruling the several exceptions to the master's report, and in confirming said report.

WATTS, JUDGE & JACKSON, for plaintiff in error :

1. The mortgage property was not conveyed for the payment of the debt; the conveyance is to Steele, for his own indemnity ; Mealing takes no interest, unless there is a surplus after paying Steele what he has paid out.—Bell v. Lamkin, 1 Stew. & P. 460 ; Hodgson v. Hodgson, 2 Keene 704 ; Moore v. Moore, 4 Hawks 358 ; 2 Eq. Dig. 412, §§ 4 and 5.

2. But, if Steele is responsible to Mealing at all, it is only on the principle that equality is equity, or that co-sureties shall share in all indemnities received by either ; and Mealing, therefore, at most, can only share in the fund actually realized from the mortgage property, and the defendant ought not to have been charged with the value of the negroes sold by the sheriff. Trustees are not responsible for losses, unless they are caused

by fraud or gross negligence. Steele had a larger interest than any other person, and of course would not be unmindful of it. Thompson v. Brown, 4 Johns. Ch. 627; Franklin v. Osgood, 14 *ib.* 560; 2 Eq. Dig. 407, § 18. The case of Steele v. Brown, 18 Ala. 700, is wholly unlike this case : there, Steele received the indemnity for the benefit of all. Steele had not paid any of the mortgage debts when the sheriff sold the negroes, and he could not reasonably be expected to assert his claim until he had been positively damaged. Besides, the facts disclosed by the master's report, show that these slaves were not lost, but were only sold subject to the mortgage.—Steele v. Adams, 21 Ala. 504.

3. When the cotton which was sold in Mobile, and applied to the payment of the debt to Rives, Battle & Co., was levied on by the sheriff, and a forthcoming bond taken, with Steele as surety, the legal right to the cotton was in him, Steele.—Langdon v. Brumby, 7 Ala. 54; Kemp & Buckey v. Porter, *ib.* 138. The forfeiture of the bond, and payment of the debt by Steele, only perfected the right, and gave him a priority over all other claimants.—Mills v. Williams, 2 Stew. and P. 390; Neff v. Miller, 8 Barr 347. Hence, the payment to Rives, Battle & Co. out of this cotton, on their debt secured by the mortgage, was a payment by Steele out of his own funds, as he had to pay the debt to the sheriff under which the cotton had been seized. Borland took the cotton to Mobile, with the intention of selling it and applying the proceeds to the execution which had been levied on it; but he failed to do so, and Steele had it to pay. Steele should be allowed the benefit of this payment on another ground : he who seeks equity must do equity, and it is certainly equitable and just that he should be allowed the benefit of it.

I. B. STONE and J. P. SAFFOLD, *contra :*

1. That Mealing is entitled to contribution from Steele, is established by the following decisions of this court : Steele v. Brown, 18 Ala. 700; Pinkston v. Taliaferro, 9 Ala. 547; and 2 Story's Eq. Jur., § 499.

2. As to the claim for a credit of $1400 on account of the money paid on the replevy bond: The case of Mills v. Williams, 2 Stew. & P. 394, cited for plaintiff in error, has been

overruled by the case of Morrison, Givhan *et al.* v. Marvin, 6 Ala. 797. That case decides, that where even a surety pays a judgment upon execution, it is a satisfaction of the judgment; " the surety is not entitled to keep the execution open for his indemnity on paying the money." The authorities cited to show that Steele, by becoming a surety on the delivery bond, acquired a right to the cotton, simply show that the surety, as well as the principal, has a special interest in the property levied on, merely for the purpose of delivering it to the sheriff, and protecting it against junior levies and third persons ; but if he suffers the defendant in execution to take the property and carry it off, he loses this right. The claim to this credit seems to be founded upon the idea, that by a fiction of law Steele shall be considered to have paid the money to Rives, Battle & · Co. out of his private funds.

3. The claim for commissions for selling the property, is tantamount to a claim for commissions for attending to his own business : he sold the property for his own benefit, and not for Mealing, who is only incidentally benefited by it.

GIBBONS, J.—From the best examination that we have been able to give the record before us, we can perceive no error in the decree of the Chancellor below. The position is undeniable, that where a mortgage, or other security, is given to one of several sureties for his indemnity on any particular debt, it enures to the benefit of all the sureties to that debt.—1 Story's Eq. § 499 ; Steele v. Brown, 18 Ala. R. 700 ; Pinkston v. Taliafero, 9 Ala. 547 ; Bell v. Lamkin, 1 Stew. & P. 460. It is also equally clear, that where a mortgage is given to one of several sureties, for his indemnity against certain debts therein specified, such mortgagee cannot apply the mortgage funds to other debts than those specified in the mortgage, to the prejudice of the other sureties, to whose benefit the mortgage security enures.—*Vide* authorities above cited.

It is by no means so clear, that the defendant, Steele, is liable to be charged in the account for the fourteen slaves sold by the sheriff, Cole, on the ground that they were sold through the carelessness or gross negligence of the defendant. It is a fact somewhat singular, that we are unable to gather from the present record the time when the note, on which both the com-

plainant and defendant were sureties to the Branch Bank, matured. This fact appears in neither the bill, answers, nor proofs in the cause ; and yet we consider it a fact material to the solution of the question, as to whether the defendant was guilty of negligence or not. If the sheriff had seized upon the mortgage property before the law day, the defendant could not have prevented a sale by the sheriff, unless he could have made out a case for equitable relief. In the absence of such an equitable case, the sale would necessarily have to be submitted to, subject, however, to the rights of the mortgagee. But it must be recollected, that the mortgage to the defendant contains a very ample power of sale, authorizing him to sell without any application whatever to any court for leave, upon short notice, on any default in the payment of any of the mortgage debts. If, therefore, after such default, or, in other words, if after the law day of the mortgage the defendant has slept upon his rights, and permitted the property to pass from his possession and control, when he had the power to realize from it by simply putting it up for sale, we could not hesitate to pronounce it such an act of negligence, as, between him and his co-surety, would charge him with the value of these slaves.

But we are precluded, in the present state of the record, from prosecuting our inquiries upon this branch of the master's report, as we find, on a careful examination of the bill and answer, that it is entirely outside of the pleadings in the case. We find no allegation whatever in the bill of gross negligence, nor any charge of want of diligence in managing the mortgage property ; and in the absence of such an allegation, it was erroneous in the Chancellor to have allowed this item in the account. —*Vide* Ansley v. Robinson, 16 Ala. 793 ; Graham v. Tankersley, 15 Ala. 634. But the defendant contends, that, even supposing that he is liable to account to the plaintiff, he is entitled to have allowed the sum of $1400, which he paid on the judgment under which the cotton of Borland was levied on, and afterwards sold in Mobile by Rives, Battle & Co., and applied towards the payment of the note of $3,100, which they held against Borland, and on which said Steele was surety. In the master's report, the $2000 for which the cotton was sold was considered by the master as a payment on the note by Borland, and consequently, that note was credited with that amount, and

the balance only allowed to Steele as a charge against the mortgage fund ; whereas, Steele contends, that notwithstanding this was paid by Borland, or by his cotton, yet, as he was the means of sending the cotton to that house, by means of his replevy bond on taking the same from the hands of the sheriff, and inasmuch as, in consequence of such interference on his part and such replevy bond, he had the sum of $1400 more to pay, therefore he ought to be allowed this $1400, as a credit to him, or a charge in his favor upon the mortgage funds.

This proposition, however plausible in its statement, we do not think sound. The proposition would be much more tenable, if the facts had shown that the liability on the replevy bond was incurred for the purpose of sending the cotton to Rives, Battle & Co., to be applied as they afterwards applied it, Whether or not, in that case, the position of the defendant could be maintained, we do not now decide. But the facts tend to show, that the liability incurred on the replevy bond for the cotton was a mere friendly act on the part of Steele, to prevent a sacrifice of the cotton, and he permitted Borland to take the same to Mobile, with a view of converting it into money, with which to pay off the very debt which Steele was afterwards compelled to pay ; but the death of Borland, and the application of the funds by Rives, Battle & Co., without the direction of any body, to the payment of the note which they held against Borland and Steele, show that the liability incurred by Steele was one in addition to the former liabilities already existing on account of the said Borland without any reference whatever to the mortgage security ; and on no principle of equity, ought he, in our opinion, to be permitted to bring in this additional liability, thus created, to share *pro rata* in the mortgage fund, to the prejudice of the complainant.

Nor do we think the court below erred in refusing to the defendant commissions for selling the property. He certainly was entitled to be reimbursed for all of the expenses which he had incurred in executing the trust, or in realizing from the mortgage ; but, where, as in the present case, the very character of trustee is denied by the defendant, and the complainant is compelled to bring him into court to fix that character upon him, even if under other circumstances he would have been entitled to commissions, the bad faith on his part would work a for-

feiture of such compensation. As to whether a trustee, such as the mortgage security rendered the defendant, would, in any case, be entitled to commissions by way of a per centage allowance, acting in good faith, we decide nothing, as that question is not presented.

For the error above noted, in charging the defendant with the slaves lost by his gross negligence, the decree of the Chancellor is reversed, and the cause remanded; with leave to the complainant so to amend his bill, as to enable him to embrace the question of care and diligence on the part of the defendant in managing the mortgage property, if he choose so to do; and the defendant in error must pay the costs of this court.