107 547
d136 665

# Vandiver & Co. v. Pollak.

*Bill in Equity for contribution from joint tortfeasor.*

1. *Joint and several liability of separate creditors causing simultaneous levies of attachments.*—Where creditors, acting separately and without concert, though simultaneously, sued out attachments, which were simultaneously levied on property which they were justified in believing had been transferred by their common debtor in fraud of their rights; and, having each indemnified the sheriff he sold t'- a

[Vandiver & Co. v. Pollak.]

property, and applied the proceeds in payment of their respective demands and the purchaser from the debtor, in an action on the indemnifying bond of one of the attaching creditors recovered damages for the wrongful taking and sale of the attached property; the levy of the several attachments was a single tort, and therefore constituted a single cause of action, for which the attaching creditors were jointly and severally liable. ,

2. *Contribution in equity.*—The doctrine of contribution is not founded on contract, but on the principle that equity of burden as to a common right, is equity—that wherever there is a common right the burden is also common.

3. *Same; as between joint tort-feasors.*—The general rule is that a trespasser confessing that he has injured, or taken the property of another, is not entitled to the assistance of the courts to recover indemnity or contribution from his associates in the trespass, but if there is not a known, meditated wrong, if the parties act *bona fide* under the supposition of the entire innocence and propriety of the act and under circumstances excluding intentional wrong, the general rule will not apply, whether it be indemnity or contribuion that is sought.

4. *Same; case at bar.*—Where in an action for contribution by one of several attaching creditors against the others it appears that said creditors, acting without concert, in good faith, severally, but on the same day, attached property which they had sufficient cause to believe had been fraudulently disposed of by their common debtor, and, on indemnifying the sheriff he sold said property, and from the proceeds thereof satisfied their respective demands; and on the recovery of damages for the wrongful seizure and sale of said property in an action by the purchaser from such debtor against one of said creditors on his indemnifying bond, such creditor was compelled to satisfy said damages; said creditor was entitled to contribution from the others participating in the benefits accruing from such attachment proceedings,

5. *Measure of liability as between joint tort-feasors.*—The satisfaction of a judgment for damages on the indemnifying bond of one of several attaching creditors inures to the benefit of all, and in a suit for contribution is to be accepted as the measure of the common liability.

6. *Parties to bill for contribution among joint tort-feasors.*—Creditors. levying attachments subsequently to those under which the property was sold are not necessary parties to a bill for contribution against those who participated in the benefits of the prior attachments where the same were found to be wrongful, and the creditor seeking contribution had made satisfaction for the resulting damages.

7. *Title to property wrongfully taken vests in wrongdoer on satisfaction of judgment for its conversion.*—Where the owner of personal property sues in trespass for the wrongful taking, or in trover for its conversion, and obtains judgment of which he receives satisfaction, the

[Vandiver & Co. v. Pollak.]

title to the property is by operation of law transferred to and vested in the wrong-doer.

8. *Duty of joint tort-feasors seeking contribution to apply securities in his hands to joint liability.*—To entitle one of several attaching creditors, who has satisfied their common liability to the owner of the property wrongfully levied on, to contribution from others who were also liable for such damages he is required to exercise due diligence in the enforcement of the title to the property attached, in order that it may be available for the discharge of their common liability.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JERE N. WILLIAMS.

The bill in this case was filed by the appellee against the appellants, and prayed for contribution from the defendants. The facts of the case are sufficiently stated in the opinion.

On the final submission of the cause, the chancellor granted the relief prayed for. The respondents appeal, and assign as error the final decree of the chancellor.

BRICKELL, C. J.—The theory on which the bill is filed is, that the appellants and appellee bearing the relation and subject to the liabilities of joint trespassers, the appellee, having been compelled to the satisfaction of all the damages resulting from the trespass, is entitled to demand contribution from the appellants. The first question we propose to consider, is whether that is the relation in which the parties stand. The material facts touching this question, as we collect them from the record, looking only to the evidence which is free from conflict, and to the admissibility of which there is no cause of just exception, are, that the parties respectively were creditors of the partnership of Harmon Brothers, who, ceasing to do business, made a sale to their father of all their property and assets. On inquiry by the common attorney of the parties into the facts and circumstances attending the sale, they were advised that it was fraudulent as to creditors, affording legal cause for the issue of attachments, to enforce payment of their debts. Acting on this advice, the parties sued out attachments, and separately indemnified the sheriff to levy upon and make sale of a stock of merchandise, the only visible, tangible property, the subject of the sale to the father. The attachments were issued on the same day,

and under the levies there was a sale, from the proceeds of which the parties received satisfaction of their demands. The father, the purchaser of the merchandise from the debtors, instituted several actions against the sheriff and his indemnitors to recover damages for the taking and sale of the merchandise, which, as to the sheriff abated, we suppose because of his death pending the suits The suit against the appellee and the surety on the indemnifying bond he had given the sheriff, resulted in a judgment against them for the sum of $5,534.-74 damages, and the further sum of $268.70 costs. An appeal was taken to this court, and there was an affirmance of the judgment. The judgment was satisfied by the appellee, but it is not clearly shown the precise amount paid in satisfaction, and after its satisfaction, the suit against the appellants was dismissed at their costs.

The wrong which formed the gravamen of the action against the sheriff and his indemnitors, consisted in the taking of the merchandise and its sale under the attachments. The wrong was the physical act of the sheriff, a continuing trespass having its incipiency in the seizure of the merchandise and terminating in the sale. There was but one trespass; but one seizure and sale of the merchandise, from which accrued to the true owner, a single, indivisible cause of action.—*O'Neal v. Brown*, 21 Ala. 482. This single cause of action, though entitled to but one compensation or satisfaction, he had the election to pursue jointly or severally against all who aided in, or who advised or procured, or accepted benefits resulting from, the trespass. If it is conceded, that there was no concert between the appellants and the appellee in the issue and levy of the attachments; that each was pursuing a legal remedy, separately and independently of the other, yet, in the single trespass which was committed, and which was the immediate act of the sheriff, their common agent, each participated to the same extent, and each accepted benefits resulting from the trespass. In *Sparkman v. Swift* 81 Ala. 233, it is said: "If several creditors sue out at different times separate writs of attachment against a common debtor, and cause them to be simultaneously levied by the same officer, they will be regarded, the levy being wrongful, as joint wrong-doers, though they may have acted sepa-

[Vandiver & Co v. Pollak.]

rately, without concert, and each was endeavoring to se-
cure a priority of lien. The wrong, in such case, con-
sists in the levy and seizure of the property, which was
done by the same officer, at the same time, for each and
all of the attaching creditors. They contemporaneously
committed the wrong by a common agent." The case
of *Stone v. Dickinson,* 5 Allen, 29, (s. c. 81 Am. Dec.
727), was referred to approvingly, in which, on reason-
ing that seems conclusive, it was held, that where differ-
ent creditors, acting separately and without concert,
caused a common debtor to be arrested at the same
time by the same officer, on their several writs, they
were joint trespassers, the arrest being unlawful, and
they were jointly liable. It was said by the court, as
may now be said properly, "it was the common case of
a wrongful and unlawful act, committed by a common
agent acting for several and distinct principals."

Though there were separate suits against the appellee
and the appellants, as we have said, there was but one
tort, for which the party aggrieved was entitled to but
one satisfaction or compensation. It is merely elemen-
tary to say, that there can be against the same person,
but one recovery for the same cause of. action.—*O'Neal
v. Brown, supra.* And so there can be, for the same
cause of action, but one satisfaction obtained from sev-
eral persons for a single injury, in itself and of itself an
indivisible cause of action. The acceptance by the true
owner of the merchandise of the satisfaction of the judg-
ment against the appellee, extinguished the single cause
of action on which the judgment was founded, and on
which the suit against the appelle was founded, forming
a bar to the further prosecution of that suit, except as to
the costs.—2 Freeman on Judgments, § 467 ; *Blann v.
Crocheron,* 19 Ala. 647 ; s. c. 20 Ala. 220 ; *Smith v. Gayle,*
58 Ala. 600 ; *DuBose v. Mars,* 52 Ala. 506. Whether the
satisfaction was by the appellants pleaded in bar of the
further prosecution of the suit, is not shown, nor is it
material. The judgment rendered is the equivalent of
that which must have been rendered, if such plea had
been interposed ; and from it all the benefit enured to
the appellants which would have resulted from a formal
plea and judgment thereon rendered.

The next question is, are the appellants bound to con-
tribute to reimburse the appellee for the moneys ex-

pended in the satisfaction of the judgment. The cause was before the court at a former term, on an appeal from a decree of the court of chancery, overruling demurrers directed to the equity of the bill. After elaborate argument, it was then decided, that as it was apparent from the allegations of the bill, the parties were jointly and severally liable for the taking and sale of the merchandise, and the taking and sale was not an intentional, meditated wrong, the appellee having been compelled to the satisfaction of the resulting damages, the appellants were under the duty of contributing to his reimbursement.—*Vandiver v. Pollak*, 97 Ala. 467.

The doctrine of contribution is not founded on contract, but on the principle that equality of burden as to a common right is equity—that wherever there is a common right, the burden is also common. In *Campbell v. Messier*, 4 John. Ch. 338, it was described or defined by Ch. Kent: "The doctrine rests on the principle that where the parties stand in *equali jure*, the law requires equality which is equity, and one of them shall not be obliged to bear the burden for the ease of the rest." The cases are numerous, the subject matter and the relations of the parties varied, in which the doctrine has been applied; they are founded upon and illustrative of the maxim, "*qui sentit commodum sentire debet et onus*—he who derives the advantage ought to bear the burden." Broom's Legal Maxims, 706. There was some common obligation, or duty, or liability, which ought to be apportioned, or which resting upon the one party primarily, ought to be borne by him to the exclusion of the others, which had fallen upon the one party solely, or in undue proportion.

For the taking and sale of the merchandise, the parties participating, and all in legal contemplation participated, who may have given physical aid, or advised or procured the acts to be done, or may have subsequently assented to and received benefit from them, incurred a joint and common liability. The party wronged had the election to sue them jointly or severally, but the election wrought no change in the nature of the acts, or in the relation of the wrong-doers. The equity of the demand of the appellee for contribution, appeals to the sense of justice. Upon him has fallen the entire burden of a joint liability, which in good conscience ought to have

[Vandiver & Co. v. Pollak.]

fallen upon him and the appellants in common, and unless it can be said he does not come into court with clean hands, he is entitled to relief. The insistence is, that he does not come into court with clean hands, that he is a tort-feasor, as were the appellants tort-feasors, in their participation in the taking and sale of the merchandise, and as between them, the court will not intervene for the relief of the one or the other.

As a general principle of the common law, it is often stated, that indemnity or contribution will not be enforced as between joint wrong-doers. The reason underlying the principle is, that courts will not lend assistance to him who founds his cause of action on an immoral or illegal act—*ex turpi causa, oritur non actio*. A trespasser confessing that he has injured or taken the property of another, is not entitled to the assistance of courts instituted as well for the protection of property as for the protection of persons, to recover indemnity or contribution from his associates in the trespass. The principle has its limitations and exceptions, and must be applied according to its true sense and meaning. A well recognized limitation or exception, observed by the most approved text writers, and declared in well considered judicial decisions, some of which were referred to when this case was formerly before the court, is, that if there is not a known, meditated wrong; if the parties act *bona fide*, under the supposition of the entire innocence and propriety of the act, there is not room or reason for the application of the principle.—Story on Agency, § 339; Story on Partnership, § 220; Cooley on Torts, 147; Pollock on Torts, 171; Bishop on Contracts, § 216; 4 Am. & Eng. Enc., 12. And this limitation or exception prevails, whether it is indemnity or contribution which is sought; there can be no distinction drawn between the one and the other. Indemnity springs from contract express or implied, and in a general way may be defined as the obligation or duty resting on one person, to make good any loss or damage another has incurred, while acting at his request or for his benefit. Contribution, it is true, is not contractual, it is an equity founded in acknowledged principles of natural justice. Whenever indemnity is free from the taint of illegality, in the absence of contract, under a corresponding state of facts, the equity of contribution may arise—the taint of illegality can not be imputed.

The general principle of the common law, and its limitation or exception is thus expressed by Judge Story: "It may be stated as a general principle of law, that an agent who commits a trespass or other wrong to the property of a third person, by the direction of his principal, if at the time he has no knowledge or suspicion that it is such a trespass or wrong, but acts *bona fide*, will be entitled to a reimbursement and contribution from his principal for all the damages which he sustains thereby. For although the general doctrine of the common law is, that there can be no reimbursement or contribution among wrong-doers, whether they are principals or are agents; yet that doctrine is to be received with the qualification, that the parties know at the time that it is a wrong. And in all these cases, there is no difference whether there be a promise of indemnity or not; for the law will not enforce a contract of indemnity against a known and meditated wrong; and, on the other hand, where the agent acts innocently, and without notice of the wrong, the law will imply a promise on the part of the principal to indemnify him."—Story on Agency, § 339. In *Coventry v. Barton*, 17 Johns. 142, Spencer, C. J., said: "I have no hesitation in saying, that it is a true and just distinction between promises of indemnity which are, and those which are not, void; that if the act directed or agreed to be done, is known at the time to be a trespass, an express promise to indemnify would be illegal and void; but if it was not known at the time to be a trespass, the promise of indemnity is a good and valid promise." In *Ives v. Jones*, 3 Iredell, (Law), 538, it was said by Ruffin, C. J.: "If it were not so, no one could ever expect assistance in enforcing his rights by means, even the most peaceable, which would subject the parties to an action sounding in tort, and an end would be put to indemnities. For, if the right be with the parties indemnifying, there is no need of the indemnity; and if it turn out to be in another, who recovers for the injury, the rule would make the indemnity void. But when the object is apparently in furtherance of justice and in the exercise of a right, and the means are not in themselves criminal, and not known to the person employed to be wrongful to a third person, there can be no objection to giving effect to a contract to save harmless, one, who from good motives, did an act for his employer, which,

contrary to his expectation, happened to be an injury to a third person. That is not like the perpetration of an act, manifestly unlawful and criminal, seeking redress against the procurer. Indemnities for acts apparently right, or not apparently wrong have always been upheld." In our own case of *Moore v. Appleton*, 26 Ala. 633, it was ruled, that where an agent is employed by a principal to do an act which is not manifestly illegal, and which he does not know to be wrong, (as to take personal property, which, although claimed adversely by another, he has reasonable grounds to believe belongs to his principal) the law implies a promise of indemnity by the principal, for such losses and damages as flow directly and immediately from the execution of the agency ; and it was said, the promise is implied upon the plain dictates of reason and natural justice.

The principle and its distinction was stated with much of care and precision by Bigelow, J., in *Jacobs v. Pollard*, 10 Cush. 287 ; (s. c. 57 Am. Dec. 105) : "No one can be permitted to relieve himself from the consequences of having intentionally committed an unlawful act, by seeking an indemnity or contribution from those with whom, or by whose authority, such unlawful act was committed. But justice and sound policy, upon which this salutary rule is founded, alike require that it should not be extended to cases where parties have acted in good faith, without any unlawful design, or for the purpose of asserting a right in themselves or others, although they may have thereby infringed upon the legal rights of third persons. It is only when a person knows, or must be presumed to know, that his act was unlawful, that the law will refuse to aid him in seeking an indemnity or contribution. It is the unlawful intention to violate another's rights, or a wilful ignorance and disregard of those rights, which deprives a party of his legal remedy in such cases."

In the case of *Farwell v. Becker*, 129 Ill. 261 ; (s. c. 16 Am. St. 267, the parties were in the identical relation of the appellants and the appellee, under a similar state of facts. After an elaborate examination of the authorities, the court said : "Under the authorities, we think it is clear that if the attaching creditors, at the time they sued out their attachments and seized the goods, acted

in good faith, exercising such prudence and caution as an ordinarily prudent person would exercise, with no intention of committing a trespass or injuring any one, but with the honest belief that the transfers made by Olquist Brothers were fraudulent as to creditors, the right of contribution exists, although it ultimately turned out that the seizure of the goods was unlawful and unwarranted.'' In *Acheson v. Miller*, 2 Ohio St. 203, (s. c. 59 Am. Dec. 663), a similar case, the court said : ''The rule that no contribution lies between trespassers, is one not of universal application. We suppose it only applies to cases where persons have engaged together in doing wantonly or knowingly a wrong. The case may happen that persons may join in performing an act which to them appears to be right and lawful, but which may turn out to be an injury to the rights of some third party, who may have a right to an action of tort against them.''

Without pursuing further our examination of the authorities, we are of opinion they maintain, that the general principle that contribution or indemnity will not be awarded as between joint wrong-doers, is limited, (to state the limitation most narrowly) , to intentional, meditated wrongs ; and has no just application when parties are acting in good faith, in ignorance of facts rendering their conduct tortious, and such ignorance is not superinduced by their own fault or negligence.

The sale to the father was recent and unusual, of course attracting the attention and exciting the inquiries of the creditors of the vendors. With care and caution, before the issue of the attachments, the appellants and the appellee instituted inquiries into the facts and circumstances attending it. An attorney was retained to conduct the inquiries, who visited the locality of the sale, of the residence of the vendors, in which they had been engaged in business. Facts came to his knowledge, which were indicative that the sale was fraudulent, and would have created in the mind of the most prudent, the reasonable belief that such was its real character. These facts he communicated to his clients, accompanied by the advice that attachments could rightfully issue, and that the merchandise was subject to their levy ; and it was upon these facts and this advice, the parties proceeded. Meditated, intentional wrong is excluded—the

parties believed, and the belief was reasonable and *bona fide*, that they were in the rightful pursuit of legal remedies to enforce payment of their just demands. The event proved only that they were mistaken, and mistaken without fault or negligence on their part. The rule of the common law, of very general application, is, that there can be no crime, when the criminal mind or intent is wanting. When that is dependent on a knowledge of particular facts, ignorance or mistake, as to those facts, *honest and real*, not superinduced by the fault or negligence of the party doing the wrongful act, absolves from criminal responsibility. It is forcibly said by Mr. Bishop : "The doctrine seems to be, that to take away the equitable right of enforcing contribution, there must be an evil intent, similar to the element of intent in the criminal law, where an ignorance of a sort to free one from culpability will excuse what otherwise would be punishable. But the wrongful act need not be a crime;" and such he states to be the philosophy of the doctrine. Bishop on Contracts, § 216, (n. 1). We repeat, of all evil intent, of all meditated or intentional wrong, the parties are acquitted. If the facts had existed, as they reasonably believed them to exist, there would have been no wrong. The remedies they pursued, were the only legal remedies which could be pursued to reach and subject the merchandise, and they were the remedies ordinarily pursued by creditors under like conditions and circumstances. The possession of the merchandise by the father, and that the seizure of the merchandise was a disturbance of the possession, is of but little, if any importance. If the sale was fraudulent, as the parties really believed, the possession under it was fraudulent ; and the merchandise was as subject to the levy of the attachments, as if it had remained in the possession of the vendors. Attachment was not only the remedy ordinarliy pursued by creditors under like conditions and circumstances, but it was not of more embarrassment to the purchaser in the assertion of his title, than any other efficient remedy to which the creditors could have resorted. The merchandise was not of peculiar value ; if the seizure and sale was wrongful, the loss and damage were capable of full compensation by the ordinary remedies of the law, and by a resort to these remedies full compensation was obtained. We conclude, the

[Vandiver & Co. v. Pollak.]

equities of the case are with the appellee, and the appellants are under duty of contribution.

The extent to which the judgment against the appellee, is to be received in evidence, seems to be a matter of controversy. The general principle is, that judgments are admissible and conclusive as evidence only against parties or privies. But the principle is also established, that as against all the world, a judgment is evidence of the fact of its own rendition and of all the resulting legal consequences.—2 Freeman Judgments, § 416; 1 Green. Ev. § 438. The present judgment was evidence not only of the fact of its own rendition, but it was evidence, as matter of inducement to the evidence that the cause of action on which it was founded was the taking and sale of the merchandise, and of the damages adjudged against the appellee for the tort.—*Preslar v. Stallworth*, 37 Ala. 402; 2 Freeman on Judgments, § 417; 1 Green, Ev. § 539. It may not be evidence that the tort was the cause of action forming the gravamen of the separate action against the appellants, and of the relation of the parties as joint tort-feasors, but these are facts clearly shown by extrinsic evidence. It was the satisfaction of the judgment which was available to the appellants, enuring to their benefit, operating a bar to the further prosecution of the separate suit against them, and discharging the common liability. It is, therefore, now to be accepted as the measure of the common liability.

The creditors who subsequently issued and caused to be levied attachments on the merchandise, were not joint tresspassers with the appellants and the appellee, and were not jointly liable with them. The trespasses they committed were separate and distinct trespasses, for which they alone were suable and liable. They were not in any aspect of the case, necessary parties to the bill.—*Sparkman v. Swift*, 81 Ala. 231.

The doctrine in this State is settled, that if the owner of personal property sue in trespass for the wrongful taking, or in trover for its conversion, and obtain judgment of which he received satisfaction, the title to the property is altered; it is by operation of law transferred to and vested in the wrong-doer.—*White v. Martin* 1 Port. 215; *Spivey v. Morris*, 18 Ala. 254; *Griel v. Pollak*, 16 So. Rep. 725. The satisfaction of the judgment against him by the appellee, converted him into the

owner of the merchandise, by relation, from the day of
its seizure by the sheriff. The subsequent attaching
creditors receiving moneys from the sheriff, derived
from the sale of the merchandise, became liable to the
appellee as the owner; it was his property which was
converted, and to him, *ex equo et bono*, the moneys be-
longed.—*Griel v. Pollak, supra.*

The remaining question is as to the extent of the
right of the appellee to contribution. As has been said,
the judgment against the appellee, as affirmed in this
court, is the measure of the common liability. It was
of that judgment that the true owner of the merchan-
dise accepted satisfaction, extinguishing the common
liability, forming a bar to the further prosecution of the
separate suit against the appellants. The legal opera-
tion of the satisfaction of the judgment was to vest in
the appellee the title to the merchandise, but the title
did not vest in him for his exclusive benefit, and it
could not be employed for his own uses only. In equity,
he must be regarded as holding it in trust; as a secur-
ity for his reimbursement of the money paid in satisfac-
tion of the judgment. The duty rested upon him so to
use the title, like the duty resting upon the appellants
to contribute to his reimbursement, is an equity spring-
ing from their relation as bearers of a common burden.
Whenever such relation exists, if there be not in the cir-
cumstances of the particular case, something rendering
it inequitable, if the party seeking contribution, has se-
curity or means of indemnity, derived from the transac-
tion in which the common liability has its origin, it is a
moral and legal duty to appropriate them to the dis-
charge of that liability. This is a settled principle of
courts of equity in relation to cosureties. If one of
them take from the principal a security or indemnity, it
enures to the benefit of all, and he will be compelled so
to appropriate it.—*White v. Banks,* 21 Ala. 705 ; *Steele v.
Mealing,* 24 Ala. 285 ; *Hartwell v. Whitwell,* 36 Ala. 712 ;
1 Lead. Eq. Cases. Pt. 1, 171; *Hall v. Cushman,* 43 Am.
Dec. (note), 562. Standing in the relation of a *quasi*
trustee, the appellee was under the duty of reasonable
diligence in the enforcement of the title to the merchan-
dise, so as to render it available for the discharge of the
common liability, and for any loss arising from his want
of diligence he is answerable.—I Lead. Eq. Cases, Pt. 1,

[Vandiver & Co. v. Pollak.]

173; *Steele v. Mealing, supra.* All moneys recovered by him from the subsequent attaching creditors, deducting the reasonable expenses of the recovery, should be applied to the discharge of the common liability. And if there has been any loss resulting from his neglect to pursue legal remedies for the recovery of moneys paid to such creditors, for the resulting damage he is answerable. To avoid misapprehension, or misconstruction on this point, we deem it proper to say, reasonable diligence does not require that the appellee should have resorted to suits against parties not residing in the State, or parties insolvent, or from whom satisfaction of judgment was not probable.

Without a reference to the register, the chancellor ascertained the principal and interest of the judgment rendered against the appellee in the circuit court, and decreed that the appellants pay the appellee one half of the aggregate. The judgment of this court was the measure of the common liability, but the error of the chancellor in this respect was not of injury to the appellants, and will not avail to reverse. But there was error of injury to the appellants. There should have been a reference to the register to ascertain and report what sums the appellee had recovered from the subsequent attaching creditors, and when the amount of the recovery or recoveries were paid to the appellee, and what was the reasonable expenses attending such recovery or recoveries; and also to ascertain and report whether by the use of reasonable diligence, the appellee could have realized other sums from other of the subsequent attaching creditors. In the present condition of the record there should also have been a reference to ascertain the precise amount the appellee paid, in satisfaction of the judgment of this court. Without the reference suggested, the equities of the parties cannot be properly adjusted.

The decree must be reversed and the cause remanded for further proceedings in accordance with this opinion.

PER CURIAM.—The applications for a rehearing have been considered. As to the application of the appellant, it is not necessary to say more, than, that we adhere to the conclusions announced in our former opinion, that the parties having incurred a common liability,

[Vandiver & Oo. v. Pollak.]

each was bound to contribute equally to its satisfaction, without regard to the amount of their respective debts against Harmon Brothers. But we are of opinion, the application of the appellee must be granted, the judgment of reversal heretofore rendered set aside, and a judgment of affirmance rendered. The reason for the reversal, was, that the chancellor should have directed "a reference to the register to ascertain and report what sums the appellee had recovered from the subsequent attaching creditors, and when the amount of the recovery or recoveries were paid to the appellee, and what was the reasonable expenses atttending such recovery or recoveries; and also to ascertain and report whether by the use of reasonable diligence, the appellee could have realized other sums from other of the subsequent attaching creditors." The evidence, and the only evidence in the record, from which we were of opinion, the duty of ordering the reference resulted, was an admission of counsel, that the appellee had recovered two judgments, against solvent parties, recovering moneys the parties had received from the sale of the goods, under attachments, subsequent to the attachments of the appellee and the appellants, from which judgments an appeal had been taken to this court. We are not now of opinion, this evidence necesitated a reference to the register. There was no disputed fact of which the register could have taken evidence; we mean, that at the time of the decree there was not such fact. If the appellee had realized the recoveries, the reference would have been proper and necessary. But the cause could not be suspended to await the happening of events, which might enlarge or diminish the liability of the appellants. Whether appellee realized these recoveries, or may realize other recoveries, he holds, and will hold them, deducting the reasonable expenses attending them, for the equal benefit of himself and the appellants; and the appellants have clear legal remedies to compel the defendant to account for them.

Let the decree of the chancellor be affirmed.