# Norwood *v.* Washington, Admr.

### *Bill in Equity by Surety for Contribution.*

1. *Mortgage; conveyance inoperative to vest title in one who is dead but named as grantee.*—Where an administrator executes a mortgage of indemnity to the sureties on the administrator's bond, but at the time of the execution of such mortgage one of said sureties so named as grantee or mortgagee therein was dead, such mortgage as to the dead surety is inoperative to convey title, and by such conveyance the legal title is vested in the other surety.

2. *Executor and administrator; effect of mortgage of indemnity.* Where an administrator executes a mortgage of indemnity to his sureties and there is contained in such mortgage a covenant that the administrator might sell at any time the lands conveyed therein for the purpose of paying an ascertained indebtedness against him in favor of the heirs of his intestate, and subsequently the lands are sold by said administrator and the proceeds of the sale are in fact applied in payment of

45c

a decree of the probate court ascertaining and declaring an indebtedness of the administrator to said heirs, the sureties who were named as grantees or mortgagees in said mortgage can claim no rights thereunder, and by reason of said sale possess no security which they could compel one of their co-sureties, seeking contribution, to appropriate to the common liability.

3. *Surety an existing creditor of co-surety; burden of proof in suit attacking conveyance of co-surety for fraud.*—A surety is an existing creditor of a co-surety from the date of the execution of the common obligation, and as such is entitled to protection against a fraudulent conveyance made by his co-surety, at any time subsequent to the common obligation; and in a bill seeking contribution from such co-surety to his son as being fraudulent and made to hinder, delay and defraud his creditors, the burden is upon the grantee in said conveyance to prove the *bona fides* of the transaction assailed.

4. *Vendor and purchaser; when abatement of purchase price not allowed for deficiency in quantity of land sold.*—Where lands sold and conveyed are described by government numbers or by metes and bounds and gross valuation is paid upon the lands by the parties to the deed, and the lands are not sold at a certain price per acre, the purchaser of said land is not entitled to an abatement of the purchase money by deficiency in acreage, or in the quantity actually sold and purchased.

APPEAL from the Chancery Court of Jackson.

Heard before the Hon. WILLIAM H. SIMPSON.

The bill in this case was filed by the appellee, J. F. Washington, as the administrator of the estate of William Washington, deceased, who was surety on the administrator's bond, against the appellant, S. W. Norwood; seeking to compel from the defendant a contribution as to an amount which said complainant had paid out of the estate of his intestate by reason of such suretyship. The facts of the case and the purpose of the bill are sufficiently shown in the opinion.

On the final submission of the cause on the pleadings and proof, the chancellor decreed that the respondent

[Norwood v. Washington, Admr.]

was not entitled to the relief prayed for in his cross bill, and ordered it dismissed, and further decreed that the complainant in the original bill was entitled to the relief prayed for and declared that the conveyance of the lands to the respondent from Samuel C. Norwood was fraudulent and void as to the complainant's intestate and ordered the sale of such of said lands as remained in the possession of Norwood, if the amount ascertained that the defendant should contribute was not paid within thirty days. From this decree the respondent appeals, and assigns the rendition thereof as error.

W. H. NORWOOD and JOHN B. TALLY, for appellant. The complainant in this case should have sold the lands under the mortgage executed by the administrators of the Bunn estate, and in that way reimburse himself. When the equity of redemption in said land was sold under the order of the probate court by J. S. Timberlake and the purchaser at such sale has no greater rights than those possessed by the mortgagors, before such sale. *Perkins v. Winter,* 7 Ala. 858; *Duval v. Bank,* 10 Ala. 636; *McNeill v. McNeill,* 36 Ala. 109; *Pryor v. Davis,* 109 Ala. 117; *Vandiver v. Pollak,* 107 Ala. 559.

"Whenever the relation of (co-suretyship exists), if there be not in the circumstances of the particular case something rendering it inequitable, if the party seeking contribution has security, or the means of indemnity derived from the transaction in which the common liability has its origin, it is a moral and legal duty to appropriate them (the securtiy fund) to the discharge of the liability."—*Vandiver v. Pollak,* 107 Ala. 559; *White v. Banks,* 21 Ala. 705; *Morrison v. Taylor,* 21 Ala. s. c. 26 Ala. 728; *Steele v. Mealing,* 24 Ala. 285; *Hartwell v. Whitwell,* 36 Ala. 712; 1 Lead. Eq. Cases 1, 171; *Hall v. Cushman,* 43 Amer. Dec. 562.

A co-surety who acts in bad faith towards his fellow surety is not entitled to contribution, although he may be indemnified by the principal.—*Owen v. McGehee,* 61 Ala. 440.

In the case at bar it appears that it is not necessary, or even permissible for complainant to call for contribution, he being fully indemnified, (see on this point, authorities, *supra*.)

In determining the legal effect of this question of indemnity as a defense to this suit, counsel deem it proper to call the attention of the court to some other pertinent facts shown by the record, that is to say, on August 11th, 1892, the decrees of the probate court were rendered against the Timberlakes in favor of the heirs of Bunn. On September 9th, 1892, the Timberlakes executed by their sureties the mortgage of indemnity made an exhibit to respondents answer. Now then, the property thus conveyed in and by said mortgage, the value of which was equal to or greater than the sum total of said probate decrees, constituted a *trust fund* to be applied to the satisfaction of said decrees. Of course said decrees of the probate court against the Timberlakes fixed the liability of their sureties, and immediately after such liability was so fixed, and without waiting to be sued, and without first paying said decrees, the complainant might, and *ought* to have gone into a court of equity to have said trust fund applied directly in discharge of said liability. This position is well settled by a vast multitude of authorities, for which see, 24 Amer. and Eng. Ency. of Law, p. 789, and notes, *Morrison v. Poynts*, 35 Amer. Dec. 92; *Owens v. McGehee*, 61 Ala. 440; *Barton v. Burton*, 75 Ala. 400; *Bodenheimer v. Chesson*, 111 Ala. 539.

S. E. BROWN and MARTIN & BOULDIN, *contra.*—Upon a bill filed to avoid a conveyance for fraud, actual or constructive, the complainant must prove an antecedent debt to which the property would be subject, but for the conveyance. His *prima facie* case is then made out. The burden is then cast on the defendant to prove a fair and adequate consideration. If, under the proof, it cannot be said there was a valuable consideration, the conveyance must stand avoided as voluntary. If the considera-

[Norwood v. Washington, Admr.]

tion proven is the payment of a pre-existing indebtedness the price being adequate, the complainant is then under the burden of showing the reservation of some benefit to the debtor. If the consideration proven is cash, or other present valuable and adequate consideration, the burden is then cast on the complainant to show fraudulent intent on the part of the grantor, with notice actual or. implied, to the grantee, see *Gamble v. Aultmon,* 23 So. 30; *Yeend v. Weeks,* 104 Ala. 331; *Hodges v. Coleman,* 76 Ala. 103; *Rice v. Eiseman,* 122 Ala. 343; *Moore v. Penn,* 95 Ala. 200; *Bell v. Lehman,* 110 Ala. 446; *Mobile Sav. Bank v. McDowell,* 89 Ala. 434-445-62; Bump on Fraud. Conveyances, p. 270-271; 8 Amer. & Eng. Ency. of Law, (1 ed.), p. 753.

S. W. Norwood, has not made out a case of *bona fide* purchaser without notice. Again it is essential to such defense that the purchase money must have been paid in full before notice. If otherwise valid, he would on proper pleading and evidence be entitled to protection to the amount paid before notice. But in this case there yet remains unpaid a balance of the purchase money of $1700.00 with interest from May 17, 1896, a sum more than sufficient to meet complainant's demand.—*Florence v. Zeigler,* 53 Ala. 221; Bump on Fraudulent Conveyances, p. 202-203; *Craft v. Russell,* 67 Ala. 9-12; *Moon v. Clay,* 8 Ala. 742; 34 Amer. St. Rep. note, p. 395; 8 Amer. & Eng. Ency. of Law, (1st ed.), p. 756, note 5.

DOWDELL, J.—The present appeal is taken from a final decree of the chancellor rendered on the pleadings and proofs. The theory and purpose of the bill is to compel contribution by a co-surety, and to that end to set aside an alleged fraudulent conveyance made by the co-surety in his life time to the respondent. In order to a better understanding of the case before entering upon a discussion of the questions presented for our consideration, we will here state some of the facts shown by the record and concerning which there is no dispute. And it may be here remarked, that in making such statement, we have copied in part from the statement of facts

as contained in the brief of appellant's counsel. On June 1st, 1878, John P. and Joel S. Timberlake were appointed by the probate court of Jackson county, joint administrators of the estate of Henry Bunn, deceased; Wm. Washington (appellee's intestate), J. F. Martin, T. N. Allison, and Samuel C. Norwood, were the sureties on the administration bond of the said Timberlakes as such administrators, which bond was in the sum of $50,000. Soon after the execution of said bond, Wm. Washington, one of the sureties therein, died intestate, and on May 27th, 1885, the appellee, J. F. Washington, was appointed by the probate court of Jackson county, administrator of his estate, and is still acting as administrator under said appointment. The remaining sureties on the bond of the Timberlakes died in the following years, viz.: J. F. Martin, in 1883; T. N. Allison, in 1893, and Samuel C. Norwood on July 17th, 1895. The estates of said sureties were insolvent at the times of their deaths, respectively.

On August 11th, 1892, said J. P. and J. S. Timberlake made final settlement of their administration of the Bunn estate in the probate court of said county of Jackson, on which settlement moneyed decrees were rendered in large sums against said administrators, and in favor of John T. and Beulah Bunn, heirs and distributees of said estate. At the time of said final settlement, said administrators, J. P. and J. S. Timberlake, owned about one thousand acres of farm lands situated in said county of Jackson, and the said Timberlakes not having the money with which to pay off said decrees against them, on September 9th, 1892, at the instance of the then remaining sureties on their said administration bond, executed to their said sureties a mortgage of indemnity, in and by which they conveyed said lands to *Wm. Washington,* T. N. Allison, and S. C. Norwood, for the purpose of saving harmless their said sureties. This mortgage among other provisions and conditions contained the following: "To have and to hold to the said

T. N. Allison, Wm. Washington, and S. C. Norwood, their heirs and assigns forever: Upon the following conditions, however, the parties of the second part covenant and agree with the parties of the first part at any time to release from this conveyance any part of the property herein described, should any of said property be sold for the purpose of settlement with the heirs of the said Bunn estate, and if need be to join with the parties of the first part in making deeds of conveyance." At the date of the execution of this mortgage of indemnity, Wm. Washington, one of the named grantees, had been dead more than seven years. On February 6th, 1893, the heirs of Henry Bunn, deceased, filed their bill in the chancery court of Jackson county against the said Timberlakes, and said J. F. Washington as administrator of Wm. Washington, deceased, T. N. Allison and S. C. Norwood, surviving sureties on said bond of said Timberlakes, for the enforcement and collection of said decrees of the probate court rendered in favor of said heirs; said chancery suit abated as to T. N. Allison by reason of his death in 1893, and abated as to S. C. Norwood by reason of his death in July, 1895. In 1894 John P. Timberlake died, and his co-defendant J. S. Timberlake was on April 26th, 1895, appointed administrator of the estate of John P.; and after this, the said chancery suit progressed to a final hearing and decree, in the names of the Bunn heirs as complainants against said J. S. Timberlake individually and as administrator of said John P. Timberlake, deceased, and said J. F. Washington as administrator of Wm. Washington's estate, as the only respondents. In 1898, said chancery suit resulted in a decree in favor of said Bunn heirs and against said J. F. Washington as administrator of Wm. Washington, deceased, for the recovery of the sum of $3,137.52 including cost of said suit, the amount of which said decree was afterwards paid off by J. F. Washington as such administrator. He then filed the present bill against the appellant, by which he seeks to compel contribution to the extent of one-half of the amount which he, Wash-

ington, was compelled under said decree to pay the Bunn
heirs, and praying to set aside and annul a certain deed
executed by appellant's father, S. C. Norwood, to appel-
lant on May 17th, 1887, by which said deed, the grantor
conveyed substantially all of his property, both real and
personal, reserving his homestead and a small amount
of personal property, being less in area and value than
what he was entitled to under the homestead and exemp-
tion laws of the State.   In the year 1897, and before
said chancery suit had proceeded to final decree, J. S.
Timberlake individually, and acting under an order of
the probate court as administrator of the estate of John
P. Timberlake, deceased, sold at public auction the lands
conveyed in the mortgage of indemnity to the sureties
at and for the price of $3,300, which said sum was ap-
plied on the decrees in the probate court in favor of the
Bunn heirs, thereby discharging and reducing the same
to that extent.   The complainant and respondent in the
present suit, both had knowledge of this sale, and the
purpose for which it was made, the respondent assent-
ing thereto, and in a measure assisting in making the
lands sell.

The recited consideration in the deed of May 17th,
1887, from Samuel C. Norwood to his son, the appellant
here, was the assumption by the grantee of the payment
of certain specified debts of the grantor enumerated in
said deed, and an additional cash consideration.   The
total recited consideration was $37,320, the aggregate
amount of the debts enumerated being $23,500, the bal-
ance recited in the deed as having been paid in cash
being $13,820.   The property conveyed consisted mainly
in lands, only a small proportion being personal prop-
erty.   The lands conveyed consisted of different tracts,
and are in general described by government numbers,
and in some instances by metes and bounds.   Following
the description of the lands, the deed recites: "The fore-
going described lands contain in all 2440 acres more or
less, and all are situated in said county of Jackson and
State of Alabama, and which said lands are valued by

the parties to this deed at the sum of $34,925." The cash consideration of $13,820 recited in the deed as having been paid, was not in fact paid in cash, but for the same, the grantee, appellant here, executed to the grantor, his father, seven promissory notes, each in the sum of $1,974.44, and each and all of these notes maturing about the same time and about nine years after date and without interest.

With this preliminary statement of facts, we will proceed to a consideration of questions raised; other facts shown in the record will be adverted to in the course of discussion as occasion may call for them.

It is first insisted by appellant, that complainant is not entitled to maintain this suit because, as it is contended, he has not first exhausted the security afforded by the mortgage of indemnity executed by the Timberlakes to the sureties on their bond. And it is further contended that the sale of the lands embraced in the mortgage, by J. S. Timberlake and the application of the proceeds to the probate court decrees in favor of the Bunn heirs, operated only a sale of the equity of redemption and that the legal title still remained to be sold. It is sought by this contention to invoke the doctrine as stated in *Vandiver v. Pollak,* 107 Ala. 559, that "whenever the relation [of suretyship] exists, if there be not in the circumstances of the particular case, something rendering it inequitable, if the party seeking contribution, has security, or the means of indemnity derived from the transaction in which the common liability had its origin, it is a moral and legal duty to appropriate them [the security fund] to the discharge of the liability." There can be no doubt of the equitable doctrine, that where one surety is possessed of security against the common liability or has the means of indemnity in his control, it is his duty to appropriate the security to the common liability before seeking contribution from his co-surety. But the facts here take the case before us, without application of this principle, and differentiate it from that of *Vandiver v. Pollak, supra,* and like cases. In the first place, the mortgage of indemnity executed by

the Timberlakes, conveyed the legal title to T. N. Allison and S. C. Norwood. Wm. Washington, the other grantee named in the conveyance had been dead for years, and the conveyance as to him was necessarily inoperative to convey title. The powers contained in the mortgage of necessity enured to the grantees Allison and Norwood, and could not have been exercised by the complainant J. F. Washington as the administrator of Wm. Washington. As administrator of a deceased co-surety, he might have proceeded in equity to have the security to the common liability, but certainly no greater obligation to do this, rested upon him than on S. C. Norwood to whom the mortgage was made, or upon the respondent, who for all purposes stood in the shoes of S. C. Norwood in the application of principles of contribution between co-sureties. Furthermore, this mortgage of indemnity contained a covenant, that the mortgagors might sell at any time the lands for the purpose of paying the probate decrees in favor of the Bunn heirs and the proceeds of the sale were in fact applied on said decrees. Our opinion is, that this contention of appellant is altogether wanting in merit.

The next insistence in argument by counsel for appellant is, that the respondent was a *bona fide* purchaser for value without notice. At the date of the conveyance here assailed as being voluntary and fraudulent, to-wit, May 17th, 1887, the grantor, S. C. Norwood, was a co-surety with complainant's intestate Wm. Washington, on the administration bond of the Timberlakes. This relationship of co-surety, as was held on former appeal in this case—128 Ala. 383—made the complainant's intestate a creditor of respondent's grantor, S. C. Norwood, within the meaning of the law against fraudulent conveyances by debtors. The relationship of creditor and debtor being established, the burden of proof as to the *bona fides* of the transaction assailed rested upon the respondent. It may be here stated that as to that part of the recited consideration in the deed representing the indebtedness of the grantor assumed by the grantee, it is shown

[Norwood v. Washington, Admr.]

that the respondent has fully reimbursed himself by sales made of portions of the land in payment and satisfaction of such indebtedness, and no effort is made by the complainant to fix any lien upon that part of the lands, but only upon such as is still held by respondent. The evidence clearly shows the recited consideration in the deed of the payment of $13,820 in cash, to be untrue, and this is not denied, and that this amount was divided into seven equal parts, and for which the respondent gave his seven promissory notes payable to the grantor about nine years after date without interest. The evidence also shows, that shortly after the execution and delivery of these notes, the grantor assigned by way of gift, one each to five of the grantor's children, and one to his wife—clearly showing an intention on the part of the grantor in making said conveyance to make a gift of his property to his wife and children. This unquestionably to that extent rendered the conveyance voluntary as to the grantor, and the question is how far did the grantee participate in the grantor's intention to make donations to his said children. The respondent denies in the first place, that he had any knowledge or notice at the time of the execution of the deed to him of his father's surety-ship in the $50,000 administration bond of the Timber-lakes, and in the second place, he denies any knowledge or notice of his father's intention to make donations of the purchase money notes to his children at the time of said transaction, and he so testifies in support of these denials made in answer to the bill. In this respect his testimony is unsupported by the testimony of any other witness in the case. If the respondent had knowledge or notice of facts calculated to excite inquiry in the mind of an ordinarily prudent man, and which when diligently prosecuted would have led to a knowledge of the real facts, this in law is equivalent to notice of such facts. There are two theories upon which the complainant insists that the deed assailed is fraudulent and should be

[Norwood v. Washington, Admr.]

set aside. The first is, that by it, the grantor conveyed all of his property, and in part for a cash consideration, and with the intent to hinder, delay or defraud his creditors, and that the grantee had knowledge or notice of such intent; and the second is, that the grantor having the intention at the time of the transaction, to make a donation of the notes given for the recited cash consideration to his, the grantor's children, and the grantee, articipating in such intention rendered the deed a voluntary conveyance and fraudulent and void as to creditors. The respondent, although denying knowledge at the time of the transaction of his father's suretyship on the bond of the Timberlakes, yet admits in his testimony that he knew his father's habit and custom in becoming surety on bonds, and that he had gone as surety on a great many bonds. This circumstance was sufficient to have excited inquiry as to his father's suretyship, and a prosecution of it would have led to a full knowledge of the facts. At the time of the conveyance, his father was sixty-four years of age, and his intention of quitting and retiring from work and all business cares was known to the son, and the further fact, that by the transaction in question, the conveyance of all of his property, and the postponement of the payment of the recited cash consideration for a period of nine years without interest was calculated to hinder, delay or defraud any creditor he might have, who was unprovided for in said deed. As to the respondent's knowledge of his fathers' purpose in the said transaction to make gifts of his property to members of his family, the nature and character of the transaction, and subsequent facts, which are undisputed, are potent circumstances, which tend to show such knowledge. He was generally familiar with his father's business, had for a long time assisted him in its management. His father was growing old, and was retiring from business. The notes given for the recited cash consideration were non-interest bearing before maturity, and were postponed in payment to a time beyond the reasonable

expectation of benefit from them to the father. The recited cash consideration was divided into seven equal parts, notes in number corresponding with the number of members of his family to whom he evidently intended to make donations. All of these notes, except the one to Graham, were afterwards paid by respondent long before their maturity, and some of them by conveyances of portions of the land, and in no case was there any abatement or discount by reason of payment before maturity. In the face of these facts and circumstances, we do not think that the burden which the law casts on the respondent of showing the *bona fides* of the transaction in order to uphold the conveyance when assailed by an existing creditor, has been discharged. But in addition to all of this, it is shown that at and after the time, when it is admitted by the respondent that he was informed by the complainant of his, respondent's father's suretyship on the bond of the Timberlakes as administrators of the Bunn estate, there was still unpaid one of the several notes assigned by his father as a gift, and that this sum still remaining in the hands of the respondent was more than sufficient to meet the demand of complainant in this bill for contribution. The respondent undertakes to meet this by claiming that there was a deficiency in the number of acres contained in the deed of May 17th, 1887, here assailed as fraudulent by the complainant, and attempts by statutory cross-bill to bring into this litigation the owners of the note still unpaid, and praying that the same be cancelled on the idea of abatement for deficiency of acreage. There was no price fixed by the acre in the deed. The lands were described by government numbers and in some instances by metes and bounds, and a gross valuation was put upon them by the parties to the deed, and they were so sold and purchased according to the terms of the written contract. Moreover, the value of the property, after excluding all shortage in acreage attempted to be set up in abatement of the purchase price, was largely in excess of the debts of the grantor assumed by the grantee, and the remainder was

to be paid in consummation of the grantor's voluntary gifts or advancements to his children. The lands remaining unsold in the hands of the respondent, and which are here sought to be subjected to complainant's demand, represent the consideration that was voluntary. We concur with the chancellor in his conclusion that there was no merit in this defense, and his rulings on demurrer to the cross-bill, and dismissing the same were free from error. We furthermore concur in his conclusion that the complainant is entitled to the relief sought by his bill. It follows, therefore, that the decree must be affirmed.

Affirmed.