147 So. 619

**GOBBLE v. BRADFORD et al.**

8 Div. 436.

Supreme Court of Alabama.

March 23, 1933.

Rehearing Denied April 27, 1933.

Lynne & Lynne, of Decatur, for appellees.

Wright & McAfee, of Decatur, for appellant.

GARDNER, Justice.

From the averments of the bill (demurrer to which was overruled), it appears that Mrs. Rhea Carson, while a gratuitous passenger in J. B. Bradford's automobile, sustained injuries to her person by reason of a collision occurring between Bradford's car and a truck of Adam Gobble, for which she recovered in separate suits damages against Bradford in the sum of $2,000, and against Gobble $700. There was but one tort, a single injury from an indivisible cause of action, though separate suits, and Mrs. Carson was entitled to but one satisfaction (Vandiver v. Pollak, 107 Ala. 547, 19 So. 180, 181, 54 Am. St. Rep. 118), and she elected, quite naturally of course, to pursue the Bradford judgment.

The judgments against Bradford and Gobble establish the fact the damages to Mrs. Carson resulted from their joint concurring negligence, and that these parties are joint tort-feasors, though the bill alleges there was no charge of any intentional wrong, and that her case rested upon the doctrine of simple negligence. Bradford and his insurance company surety, having paid the judgment against him, seek reimbursement of one-half

thereof from Gobble, resting their right to relief upon the equitable doctrine of contribution, founded as it is on the principle that equality of burden as to a common right is equity. "The doctrine rests on the principle that where the parties stand in equali jure the law requires equality, which is equity; and one of them shall not be obliged to bear the burden for the ease of the rest." Vandiver v. Pollak, supra.

■ Admittedly, it is the general rule that, where one of several wrongdoers has been compelled to pay the damages for the wrong committed, he cannot compel contribution from the others who participated in the commission of the wrong. Or more concisely stated, one of several joint tort-feasors cannot enforce contribution from any of the other tort-feasors. 13 Corpus Juris, 828; 6 R. C. L. 1054; Vandiver v. Pollak, supra. It finds expression in the maxim that no man can make his own misconduct the ground for an action in his own favor. "If he suffers because of his own wrongdoing, the law will not relieve him. The law cannot recognize equities as springing from a wrong in favor of one concerned in committing it." 1 Cooley on Torts (3d Ed.) p. 254.

But the rule has its exceptions or limitations, and counsel for complainants insist the bill states a case within one of these exceptions, in that, while there was concurrent simple negligence, yet there was no intentional wrong committed, and nothing of moral turpitude involved. Doubtless the strongest support favoring this view is to be found in the Wisconsin decisions. Ellis v. Chicago & N. W. Rwy. Co., 167 Wis. 392, 167 N. W. 1048, 1053; Mitchell v. Raymond, 181 Wis. 591, 195 N. W. 855; Roeber v. Pandl, 200 Wis. 420, 228 N. W. 512.

The exact question here presented has never been determined in this state, and a correct solution should rest upon the fundamental and underlying principle of the law. We find this principle well stated in 1 Cooley on Torts (3d Ed.) p. 260, from which we take the following rather extensive excerpt:

"It may be thought that the maxim that the law will not relieve a party from the consequences of his own wrong-doing partakes more of severity to the particular person singled out by the plaintiff for pursuit, than it does of general justice. It may be right to punish him, but is it right to exempt from punishment others equally guilty? If strict justice, as between individuals were all that was aimed at, we should be compelled to answer this question in the negative; and we must therefore look further for the reason of the rule.

"It has already been intimated that the rule, as we have given it, is one of very general application, and not by any means con-

fined to cases of joint torts. Whoever, by his pleadings in any court of justice, avows that he has been engaged with others in an unlawful action, or has concerted with them in an unlawful enterprise, and that in arranging for or carrying it out he has been unfairly treated by his associates, or has suffered an injustice which they should redress, will be met by the refusal of the court to look any further than his complaint, which it will at once order dismissed. The following reasons may be assigned for this action: 1. The discouragement of all illegal transactions by distinctly apprizing every person who engages in them that the risk he incurs is not merely of being compelled to share with the others the loss that may follow, for this, in many cases would be insignificant, and in all cases would be small in proportion to the size and formidable character of the combination. He, is, therefore, given to understand that whoever takes part in an illegal transaction must do so under a responsibility only measured by the whole extent of the injury or loss; an understanding very well calculated to make men to hesitate who, under a different rule, would be disposed to give full scope to evil inclinations. But 2. The State, from a consideration of its own pecuniary interests, and of the interests of other litigants, may wisely refuse to assist in adjusting equities between persons who have been engaged in unlawful action. The expense of administering justice is always a large item in the State's expenditures, and one which must be borne by the common contributions of the people. Where one has suffered from participation in an unlawful undertaking, what justice can there be in any demand on his part that the State shall supply courts and officers and incur expense to indemnify him against a loss he has encountered through a disregard of its laws? Here the question is not merely one of what is right, as between himself and his associates, but what is best for the interest of the State. When that question is up for consideration, the fact is not to be overlooked that there are unavoidable difficulties and necessary evils connected with litigation which multiply rapidly as the cases increase in number. Courts and juries, at the best, are but imperfect instruments for the accomplishment of justice; and the greater the volume of litigation, the less is the attention which any particular case is likely to receive, and the greater the probability that right may be overcome by artifice, or by a false and deceptive exposition of the facts. Trusty justice must follow after wrong with deliberate and measured tread; and every honest litigant in seeking it must be more or less impeded, when those who have no just claim on the consideration of the court are allowed to push their complaints before it."

These fundamental reasons exclude, as the sole object of attainment, strict justice as be-

tween the parties, and lay greater stress upon the matter of public policy and the interest of the public at large. And, if the general rule is based upon the maxim that no man can make his own misconduct the ground for an action in his own favor, we find no foundation upon which to rest an exception of a wrongdoer who, though not guilty of an intentional wrong, yet nevertheless was guilty of such negligence as results in serious injury to an innocent third person.

The Supreme Court of the United States in Union Stock Yards Co. v. Chicago, B. & Q. R. Co., 196 U. S. 217, 25 S. Ct. 226, 229, 49 L. Ed. 453, 2 Ann. Cas. 525, makes no such distinction, and that authority in principle is here directly in point. There the terminal company was compelled to pay damages to one of its employees who sustained injuries by reason of a defect in one of the cars he was then operating, as to which the terminal company was negligent in failing to inspect, a duty also devolving upon the railroad company which it negligently failed to perform. The case was one, therefore, of failure of inspection on the part of both the terminal company and the railroad company—one of simple negligence chargeable to each. The court concludes its observations denying contribution, as follows: "In the present case the negligence of the parties has been of the same character. Both the railroad company and the terminal company failed, by proper inspection, to discover the defective brake. The terminal company, because of its fault, has been held liable to one sustaining an injury thereby. We do not think the case comes within that exceptional class which permits one wrongdoer who has been mulcted in damages to recover indemnity or contribution from another."

The case of Louisville v. Louisville R. Co., 156 Ky. 141, 160 S. W. 771, 775, 49 L. R. A. (N. S.) 350, is also in point, and follows the reasoning and holding in Union Stock Yards Co. v. Chicago, etc., R. Co., supra. Other authorities are noted in the opinion, among them the case of Cent. of Ga. Rwy. Co. v. Macon R. & L. Co., 9 Ga. App. 628, 71 S. E. 1076, from which the following interesting discussion of the question is quoted: "It is an anomalous if not unprecedented thing for a litigant who is a confessed wrongdoer to come into court and set up the fact that its own wrongful act, concurring with that of another, has destroyed human life, and ask the courts to adjust the equities between it and the other wrongdoer. If the courts could be expected to ignore the interests of the public entirely, and to overlook all considerations of public policy, and consider only the doing of justice between these two wrongdoers, there might be much merit in the appellant's contention. But eliminating the purely individual relations between the parties, and viewing the question entirely from a public standpoint, we have a plaintiff in court, who has confessedly violated a duty which it owes to the public, asking that same public, through its courts, to compel another to share with it the loss it has sustained on account of such violation, because the other was equally remiss in its duty to the public in an entirely different way, when their separate violations of public duty concurred to bring about the injury for which it has been held liable. Stated in a different way, it is demanding that at the time its unknown coactor in the commission of this offense against the public shall be made to share its loss. The negligent act of each was the violation of a duty it owed to the public; operating concurrently, the two negligent acts brought about the result; they were each equally remiss in the performance of their duties to the public. That being true, when either appeals to the public, through its courts, for redress against the other, it will be denied, and they will be left where they are found."

To like effect is the case of Tacoma v. Bonnell, 65 Wash. 505, 118 P. 642, 645, 36 L. R. A. (N. S.) 582, Ann. Cas. 1913B, 934, wherein the court concludes the discussion with the statement: "The concurring negligence of both parties therefore caused the injury. Under the authorities above cited, the parties were in pari delicto, and neither may recover against the other."

There are expressions in some of the authorities which lend color to complainants' view, but should be read and considered in the light of the facts presented and the question for determination. Illustrative is the Massachusetts case of Inhabitants of Lowell v. Boston & L. R. Corporation, 23 Pick. 24, 34 Am. Dec. 33, cited by complainants, where the language used was by way of argument only in reaching the conclusion that a municipality held liable to persons on the highway, without actual negligence on its part, was entitled to recover against a railroad company which created the dangerous condition in the street and negligently failed to maintain barriers, and the authorities noted were cases where the plaintiffs in action for contribution had been held liable because of constructive negligence, or as has been said, their "derivative liability."

So likewise with the case of Horrabin .v. City of Des Moines, 198 Iowa, 549, 199 N. W. 988, 38 A. L. R. 554, where the holding was that one employed by a city to construct a bridge on a right of way to be furnished by the city is entitled to indemnity from the city for damages which he is compelled to pay for trespass in the good faith use of the right of way under the direction of the city, when the city had not acquired title to it. The effect of the holding was simply that, notwithstanding the contractor in the strict legal sense was liable to the owner for the trespass, yet, as between himself and the city, he was but in good faith in the innocent performance of his contract, and, as between "him-

self and the city, the wrong was the wrong of the city," and they were not in pari delicto.

There are cases also in which the one asking contribution was not an actual participant in the wrong, and the parties are held not to be in pari delicto, and cases of constructive negligence or "derivative liability," as it has been termed, have been said to be not so much exceptions to the rule, but that they simply do not fall within it. Note, Tacoma v. Bonnell, supra.

Other excepted cases are those in which the wrongdoers, honestly believing they are pursuing a lawful course, do what is apparently lawful, and the wrong inflicted arises from an inference of law and not the foreseen result of the wrongful act. Such exceptions are illustrated by our own case of Vandiver v. Pollak, supra, where the right of contribution is given to one of several attaching creditors against the others, where he acted in the honest belief that he was pursuing a lawful course but has been compelled to satisfy a judgment for wrongful attachment. Such an exception seems to be universally recognized (13 Corpus Juris, 830), and the language of this case is to be considered in the light of the facts there presented.

Many of the excepted cases may be placed in one class where, though as to the injured party both may be technically in the wrong, it is not so as between the parties themselves. 1 Cooley on Torts, p. 257. Judge Cooley (1 Cooley on Torts, p. 258) illustrates some of the inaccuracies of expression as found in the reported cases touching this subject by the following observation:

"An attempt has been made in some cases to lay down a general rule by which it may be determined in every case whether the party is or is not entitled to contribution. Thus, in Ohio, the judicial conclusion is, that 'the common sense rule and the legal rule are the same, namely, that when parties think they are doing a legal and proper act, contribution will be had; but when the parties are conscious of doing a wrong, courts will not interfere.'

"This statement is a little inaccurate, in that it denies redress in the cases only in which parties are conscious of wrongdoing. There are many cases in which the absence of consciousness of wrong could not excuse a man either in law or morals. An English case states the rule more concisely as follows: 'The rule that the wrongdoer cannot have redress or contribution against each other is confined to cases where the person seeking redress must be presumed to have known that he was doing an unlawful act.' If he knew the act was illegal, or if the circumstances were such as to render ignorance of the illegality inexcusable, then he will be left by the law where his wrongful action has placed him."

In Ellis v. Chicago & N. W. Rwy. Co., supra, the Wisconsin court quotes extensively from 6 R. C. L. pp. 1054–1055. The text contains the following statement as to the test to be applied: "The true test would seem to be, Are the parties, as between themselves, wrongdoers? If they are, then they must take advantage of their own wrong in order to recover contribution; if they are not, then it is not necessary for them to allege their own wrong. Whether or not they are as between themselves wrongdoers is determined by the test whether or not they knew, or must be presumed to have known, that the act was wrongful, and the rule does not apply to a person made a wrongdoer by inference of law only."

It is difficult to compose a general and all-inclusive correct statement of the rule, but the foregoing admirably approximates such a statement and suffices for the purpose at hand.

As between Bradford and Gobble the judgments recovered are conclusive to the effect they were each guilty of negligent conduct in the operation of their respective cars on the occasion of this accident (Cent. of Ga. Rwy. Co. v. Macon R. & L. Co., 9 Ga. App. 628, 71 S. E. 1076; Louisville v. Louisville R. Co., 156 Ky. 141, 160 S. W. 771, 774, 49 L. R. A. (N. S.) 354), and they must be presumed to have known that such negligent operation was wrongful. They were joint tort-feasors, and they were as between themselves wrongdoers within the meaning and influence of the general rule. We think this conclusion is supported, not only by the weight of authority, but, considering the underlying principle of the rule, by sound reasoning as well.

The bill goes a step further and avers that Bradford, for this same collision, sued Gobble and recovered a judgment of one cent, and that Gobble, having sued Bradford, recovered no judgment, and the argument is advanced that, as between the two, by virtue of these adjudications, it should be held that, though both were guilty of negligence, yet that of Gobble should be held to be the primary cause of the injury suffered by Mrs. Carson.

To a like argument presented in Louisville v. Louisville R. Co., supra, the court said: "As to personal injuries, where each wrongdoer is the active participant in the commission of the injury, but one to a less degree or extent than the other, we have been cited to no case where contribution can be had." The question was also considered in Central of Ga. Rwy. Co. v. Macon R. & L. Co., supra, and the court answered by saying that the very nature of the right of action requires that such second action proceed on the theory that the jury found correctly in the first action.

522

The doctrine of that case is that, if complainant's negligence was, in any sense, a proximate cause of the injury, he will be deemed to be in pari delicto with the defendant, without the rule denying contribution between tort-feasors. So considered, the question of proximate cause as to complainant Bradford has been determined against him, and we are in accord with these authorities that the matter of degree of negligence is not now open to consideration.

. There are some broad expressions in Vandiver v. Pollak, supra, quoted also in Eureka Coal Co. v. Louisville & Nashville R. R. Co., 219 Ala. 286, 122 So. 169, lending color to the conclusion of the learned chancellor, but they were used by way of argument and to be considered in the light of the facts there presented. In neither case was there presented any such question as here involved, and their language is not to be construed as in any manner militating against our present conclusion.

We have here treated the case as discussed by counsel for the respective parties, and construe the bill as disclosing complainant Bradford was held to liability for his personal negligence in the operation of his car, while defendant Gobble's liability was rested upon the doctrine of respondeat superior. So considered, the authorities herein noted, in our opinion, deny to Bradford relief by way of equitable contribution. Upon the right of contribution on the part of one whose liability is grounded solely on the doctrine of respondeat superior, we are not called upon to express an opinion. Upon this question the case of Union Stock Yards Co. v. Chicago, etc., R. Co., 196 U. S. 217, 25 S. Ct. 226, 49 L. Ed. 453, 2 Ann. Cas. 525, and authorities noted in 13 Corpus Juris, 830, may be profitably consulted. Our decision here is confined as indicated.

We are persuaded, therefore, the demurrer was well taken, and should have been sustained.

Let the decree stand reversed.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.