ALMON, Justice.
James Bailey, as father of Rebecca Ann Bailey, and Corinne Bailey Stroud, as representative of the estate of Carl Stroud, respectively, filed wrongful death actions against the estate of Louie Cosby and against Cosby’s employer, the Shelby County Commission (“Shelby County”). The lawsuits, consolidated for trial and on appeal, alleged that Rebecca Ann Bailey and Carl Stroud’s deaths were caused by Cosby’s negligence, and that Shelby County was liable under the principle of respon-deat superior.
These cases arose from a September 1985 automobile collision on Valleydale Road in Shelby County. Leroy Farley was traveling east on Valleydale Road, driving an 18-wheel 45-foot tractor-trailer combination. Two vehicles, a pickup truck and a foreign car, were in front of Farley. Farley saw a Shelby County sheriffs department car, driven, as it turns out, by Louie Cosby, go past him in the opposite direction, west. Cosby stopped, turned around, and proceeded in the same direction as Farley. Cosby turned on the car’s blue lights, but not the siren, and approached Farley, going approximately 70 miles per hour. Cosby caught up with Farley, then pulled out to pass him. At the place where Cosby pulled out to pass, the road went both uphill and around a curve, and Cosby, passing Farley, crossed a double yellow line at the crest of the hill. Carl Stroud, with his granddaughter Rebecca Ann Bailey, was driving an automobile in the westbound lane on the other side of the hill, out of Cosby’s sight, according to testimony at trial. The cars collided virtually head-on, and all three occupants, Stroud, Bailey, and Cosby, were killed.
James Bailey, as father of Rebecca Ann Bailey, filed an action against Alabama Farm Bureau Mutual Casualty Insurance Company (“Farm Bureau”), Shelby County, and Eason Mitchell as administrator of Louie Cosby’s estate. Corinne Bailey Stroud, representative of the estate of Carl Stroud, filed an action against State Farm Mutual Automobile Insurance Company (“State Farm”), Shelby County, and Eason Mitchell as administrator of Louie Cosby’s estate. The cases were consolidated. The trial court severed the claims against Farm Bureau and State Farm, as carriers of uninsured motorist coverage, and the insurance companies are not involved in this appeal.
Bailey’s and Stroud’s claims are similar. They contend that Cosby, while acting within the line and scope of his employment as an agent for Shelby County, negligently drove an automobile, causing the automobile to collide with the vehicle occupied by Rebecca Ann Bailey and Carl Stroud, thus killing both of them. The case went to trial, and the jury found for both plaintiffs, awarding them $500,000 each. Shelby County and Eason Mitchell appeal; we will refer in most instances to both defendants as Shelby County.
Shelby County argues that it was entitled to a new trial because of improper questions asked during voir dire of the venire panel by Scott Powell, the plaintiffs’ lawyer. The following is the trial transcript of the part of the voir dire in question:
“MR. POWELL: Have any of you or any members of your family ever worked in the claims department of any company or government agency, worked in the claims department of any company or governmental agency?
“Yes, Ms. Johnson.
*745 “MS. JOHNSON: I worked for Sevier Insurance Agency and I handled the claims.
“MR. POWELL: You don’t work there now, I don’t take it; do you?
“MS. JOHNSON: No, I don’t work there now.
“MR. POWELL: How long has that been since you have worked with them?
“MS. JOHNSON: The last day I worked for them was August the 1st of ’86.
“MR. POWELL: How long did you work for them, Ms. Johnson.
“MS. JOHNSON: About seven years. And then I went — well, I worked for U.S.F. & G. about ten years and Sevier about seven years.
“MR. POWELL: When you worked at U.S.F. & G., did you handle claims?
“MS. JOHNSON: No, underwriting.
“MR. POWELL: Underwriting?
“MS. JOHNSON: In that department.
“MR. POWELL: I believe you said that when you worked with the Sevier Insurance Agency, that you did handle claims for them?
“MS. JOHNSON: Right.
“MR. POWELL: What type of claims did you handle?
“MS. JOHNSON: Mostly automobile, Workmen’s Comp, mostly.
“MR. POWELL: Did you make decisions one way or another as to which claims should be paid and which claims shouldn’t be paid?
“MS. JOHNSON: No, we just send in the claims reports to whichever company the person was insured with and they handled the claim there.
“MR. POWELL: The Sevier Insurance Agency is like a brokerage house; is that right.
“MS. JOHNSON: It’s independent.
“MR. POWELL: An independent agent?
“MS. JOHNSON: Right.
“MR. POWELL: And they would write insurance with other major companies and y’all would just collect the claims and send them to whichever company had written the policy; is that right?
“MS. JOHNSON: Yes, sir.
“MR. POWELL: Thank you, Ms. Johnson. Anybody else?
“MR. HOWELL: My wife was with an insurance company about 20 years ago.
“MR. POWELL: Okay. Which company did she work for?
“MR. HOWELL: It was a small company down in South Alabama, they were independent agents.
“MR. POWELL: All right, sir. Did she handle—
“MR. HOWELL: Insurance at the hospital.
“MR. POWELL: Did she handle claims, did she work in claims?
“MR. HOWELL: Basically like—
“MR. POWELL: Like Ms. Johnson?
“MR. HOWELL: Right, she passed it on to the company.
“MR. POWELL: All right. Did I hear you say that she had done that about 20 years ago?
“MR. HOWELL: That was 20 years ago that she was with them.
“MR. POWELL: Has she worked in the claims field at all the last 20 years?
“MR. HOWELL: No, sir.”
After the voir dire, the defense made a motion for a mistrial based on these exchanges; after the verdict, the defense included this ground in a motion for a new trial. Shelby County contends that, while the first question about claims may not have been improper, that question plus the follow-up questions constituted a basis for a mistrial or a new trial. These questions could be a basis for mistrial if the questions either improperly injected into the voir dire the issue of insurance or if the part of the question about employment of members of the veniremen’s families was improper. See Cooper v. Bishop Freeman Co., 495 So.2d 559 (Ala.1986).
The initial question asked if “you or any members of your family ever worked in the claims department of any company or government agency.” We note that claims department employment exists in many areas other than with insurance companies. A plaintiff’s lawyer could reasonably suspect that a person who had processed *746 claims might be an unfavorable juror. To hold that this question necessarily injects insurance into the voir dire requires an inappropriately narrow view of the reasons for asking potential jurors if they have worked in a claims department. We refuse to adopt such a view; merely asking about employment in a claims department of a company or government agency does not improperly inject insurance into the voir dire.
Shelby County further contends that the plaintiffs’ follow-up questions sufficiently injected insurance into the voir dire to warrant a mistrial. Vickers v. Howard, 281 Ala. 691, 208 So.2d 72 (1968), addresses a similar fact situation and disposes of this issue.
In Vickers the plaintiffs attorney was informed by a prospective juror that the juror worked as an agent for an insurance company, but the plaintiffs attorney did not ask any further questions of the agent. When the plaintiff appealed, he argued both that he was entitled to a new trial because the juror deceived him, and that he should have been able to strike the juror. The Court held that the plaintiffs failure to test the prospective jurors about matters that might disqualify them operated as a waiver of the right to a new trial on that account. Vickers, supra, 281 Ala. at 693, 208 So.2d at 74.
Shelby County urges this Court to hold that, when the plaintiffs’ lawyer made further inquiries into the kind of relationship that a prospective juror had with an insurance company, the same kind of inquiry as the plaintiff’s lawyer failed to make in Vickers, the inquiry created grounds for a mistrial, because it improperly injected insurance into the voir dire. Confronted with the discovery that a prospective juror worked for an insurance company, the plaintiffs, under the holding in Vickers, must either inquire into that juror’s affiliation with the company, strike the juror blindly, or lose the right to appeal from the inclusion of that venireman on the jury. On the other hand, if we were to hold as Shelby County requests, the inquiry that Vickers dictates in order to exercise an informed strike and to preserve the issue on appeal would be grounds for a mistrial.
Shelby County argues that because part of the plaintiffs’ question asked about prospective jurors’ family members’ employment, the question is grounds for a mistrial. To support this contention, it cites Cooper v. Bishop Freeman Co., supra. In Cooper, Sylvia Cooper suffered burns on her left hand and arm while at work. At trial, Cooper’s lawyer asked three questions:
“Are you employed by an insurance company, or is any member of your family so employed?
“Have you ever worked for any insurance company claims department?
“Are you related by blood or marriage to any insurance adjuster?”
Cooper at 561.
Defense counsel objected to these questions as overbroad and the trial court sustained the objections. Id. This Court affirmed, expressly holding improper the inquiry into whether any member of the family of the prospective jurors worked for an insurance company.
Cooper is distinguishable. First, in Cooper, the questions specifically asked whether the family member was employed by an insurance company. Cooper, supra, at 561. As we have already made clear, in this case the plaintiffs’ question was an inquiry about working in the claims department of any company or government agency, not an inquiry about insurance companies specifically. Furthermore, in Cooper, the defense objected to the question by the plaintiff, allowing the trial judge to take the corrective action of sustaining the objection. Id. Shelby County never objected, choosing to allow the plaintiff to ask the question and follow-up questions before finally deciding to object.
Considering the principles discussed above and that the extent of voir dire examination is largely discretionary with the trial court, Welborn v. Snider, 431 So.2d 1198 (Ala.1983), we hold that the trial court did not err when it refused to grant Shelby County’s motion.
*747 Shelby County’s second argument is that the trial court erred when it excluded evidence tending to show that Shelby County had never received reports or complaints that Cosby acted improperly during emergency pursuits. (Emergency pursuit was an issue at trial because Shelby County contended that Cosby was chasing someone when he passed Farley.) While this evidence is clearly inadmissible to show that Cosby acted properly during the emergency pursuit, Shelby County argues that the plaintiffs “opened the door,” during their case, and that it should have been permitted to show that it had received no complaints.
The plaintiffs presented testimony by Dr. Thomas Barber to indicate that Shelby County had been negligent in its training concerning emergency pursuit. At a bench conference held shortly before the close of the plaintiffs’ case, plaintiffs’ counsel said that they were including a claim for negligent instruction, but then decided not to submit that claim to the jury.[1] The trial court later allowed Shelby County to present evidence about Shelby County’s training for emergency pursuit. Shelby County presented testimony by Officer Wayne Watts that Cosby had been properly trained and that, indeed, Cosby had even taught seminars on emergency pursuit himself. Since Shelby County was allowed to rebut the plaintiffs’ claims about its alleged negligence in training, Shelby County was not prejudiced by Barber’s testimony.
The trial court refused, however, to allow Shelby County to present evidence that it had received no reports that Cosby had, on other occasions, been careless during emergency pursuit. Shelby County argues that the lack of reports should be admissible for mitigation on punitive damages. This argument is not convincing. The plaintiffs never introduced evidence, nor could they properly have introduced evidence, to show that Cosby had historically driven negligently; thus the plaintiffs certainly did not open the door for Shelby County to introduce evidence that it had never received reports that Cosby had acted improperly.
Shelby County argues that three separate statements made by the plaintiffs’ lawyer in closing argument are grounds for a new trial, and that even if the statements individually do not constitute grounds for a mistrial, the statements’ cumulative effect should. This is the first statement that Shelby County bases this argument on:
“But what we have, I think you will remember this, too, remember this County lawyer over here said, well sir, you haven’t been sued in this matter; have you. And he said, not that I know of.
“Well, don’t you know, ladies and gentlemen, don’t you know that if for one minute, for one minute they believe that it is the man’s fault, the poor truck driver’s fault that this wreck happened, that he would have been sued, they would have sued him and he would be in this courtroom with all of us here this week.
“MR. MARTENSON: Mr. Powell has been practicing longer than I have and he knows there is no way under the law of Alabama for us to sue that truck driver and his employer, no way.
“THE COURT: Sustained.
“MR. POWELL: Mr. Cosby’s estate can.
“MR. MARTENSON: We ask the Court to instruct the jury as an improper statement of the law.
“THE COURT: Overruled. Go ahead, please.”
Undoubtedly, since the plaintiffs did not include Farley as a defendant in this lawsuit, neither Shelby County nor representatives of the estate of Louie Cosby could have filed a cross-claim against Farley. If the statement by the plaintiffs’ lawyer referred to either Shelby County or the estate of Louie Cosby seeking contribution from Farley, the statement was inaccurate, because one tort-feasor cannot receive con *748 tribution from another. Gobble v. Bradford, 226 Ala. 517, 147 So. 619 (1933).
However, when viewed in the context of the entire trial, the statement, properly understood, is a comment on a defense asserted by Shelby County. Throughout the trial Shelby County repeatedly tried to indicate that Farley’s failure to yield the right-of-way to Cosby was the cause of the accident, a superseding, intervening cause. Shelby County attempted to show this with a rigorous, lengthy cross-examination of Farley. In closing argument, after the plaintiffs’ argument quoted above that the defense objected to, Shelby County stated that the accident was Farley’s fault:
“There is no reason in God’s universe for him [Farley] not to have slowed down. There is no reason for him not to have pulled over on the numerous chances he had. And, if he had, folks, this accident would have never happened.”
Using the third-party practice procedure of Rule 14, Ala.R.Civ.P., representatives of the estate of Louie Cosby could have filed a wrongful death action against Farley; Shelby County could have filed an action against Farley for any economic losses it suffered in the accident. Thus, considering the statement in light of the entire trial, we refuse to hold that the trial court committed reversible error when it denied Shelby County’s request for a curative instruction or its motion for new trial based on this exchange. See Otis Elevator Co. v. Stallworth, 474 So.2d 82 (Ala.1985).
Shelby County further argues that the following exchange is a basis for a new trial:
“MR. POWELL: What we have got is a shadow that they are trying to raise. Because doesn’t it all boil down to this, ladies and gentlemen, doesn’t it all boil down, doesn’t it all boil down to Mr. Watts’ candid admission, and I thank you for that candid admission, sir; his candid admission up here from the witness stand when he told y’all this morning, yes, sir, it is our fault. Yes, sir, it is our fault. Doesn’t that simplify the whole matter for everybody?
“And we finally, after two years and three months, we get down to this stage in front of you ladies and gentlemen, after these folks have been in this matter, gone through what has occurred and then finally, finally when confronted by 12 jurors to decide this case, the County is going to stand up and say, yea, it’s our fault.
“And I am sorry it took that long for that to occur to y’all.
“MR. MARTENSON: Judge, I object.
“THE COURT: Sustained. Disregard that remark, ladies and gentlemen.”
While the remark was objectionable, the trial court immediately gave an unequivocal curative instruction to “disregard that remark.” Under these circumstances, we do not find reversible error. Otis Elevator at 84.
We have found no reversible error in any of the individual statements that Shelby County argues should lead to a reversal for improper argument. Neither do we find reversible error in the statements collectively.
Shelby County asks for a remittitur, based on the arguments already presented. The trial court, complying with Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), refused to grant a remittitur. The trial court’s refusal to grant a remittitur will not be reversed unless the trial court’s refusal was an abuse of its discretion. Black Belt Wood Co. v. Sessions, 514 So.2d 1249 (Ala.1986). None of Shelby County’s arguments convinces this Court that a reversal is warranted; neither do the facts or arguments convince us that a remittitur is warranted. Accordingly, the trial court did not abuse its discretion in denying the re-mittitur.
The judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and ADAMS, J., concur.
MADDOX J., concurs specially.
STEAGALL, J., concurs in the result.

. Bailey’s counsel chose instead to submit to the jury one claim, that Cosby, while acting within the line and scope of his employment as an agent for Shelby County, negligently drove his automobile, causing the automobile to collide with the vehicle occupied by Rebecca Ann Bailey and Carl Stroud, thus killing both of them.